## RINKEVICH *v.* COELING.

AUTOMOBILES—GUEST PASSENGER—EQUALLY DIVIDED COURT.
  Directed verdict and judgment for defendant host motorist
  and his employer in action by administratrix of estate of
  guest passenger who was killed while on a combined business
  and fishing trip is affirmed by an equally divided court (CLS
  1954, § 257.401).

Appeal from Kent; Verdier (Leonard D.), J. Submitted October 7, 1955. (Docket No. 50, Calendar No. 46,527.) Decided December 28, 1955.

Case by Genevieve Rinkevich, administratrix of the estate of Peter Rinkevich, deceased, against Russell Coeling and Empire Lumber Company, a Michigan corporation, under the death act for damages arising from alleged gross negligence resulting in death of guest passenger. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed by an equally divided court.

*Schmidt, Smith & Howlett,* for plaintiff.

*Allaben & Davids* (*Warner, Norcross & Judd,* of counsel, for defendant Empire Lumber Company; *Jay W. Linsey,* of counsel, for defendant Coeling), for defendants.

BUTZEL, J. (*for reversal*). The parties to this action were residents of the city of Grandville, Kent

---

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error §§ 1159, 1160.

county, Michigan. Plaintiff's decedent, Peter Rinkevich, was its chief of police. We shall refer to decedent as plaintiff, to defendant Russell Coeling as defendant, and the latter's employer, Empire Lumber Company, a Michigan corporation, as codefendant. The company's principal office was located in Grandville and defendant solicited orders for it in neighboring cities and villages. Defendant was the sole owner of a 2-door Lincoln automobile which he used when on business for the codefendant who reimbursed him for gas and oil expenses. He was not an officer of the company. On April 18, 1951, defendant invited decedent to go with him on what the record indicates was a combination business and fishing trip. They first drove to Big Rapids where defendant made some business calls. They then bought some fishing bait and proceeded to the Muskegon river near Rogers dam. After remaining there for from 20 to 30 minutes they found it raining too hard to fish and therefore started driving southward toward Rockford, Michigan, where defendant intended to call on the Rockford Lumber Company on business of the Empire Lumber Company. It was their further intent to proceed from Rockford to the Rogue river in order to continue their fishing activities. Rogue river according to the map is at or very near Rockford.

En route to Rockford they drove along highway US–131, a rather heavily-traveled black-top road. Defendant admitted that it was raining steadily and that the road was slippery and that he knew that it was, and that he slowed down from 50 to 55 miles an hour to possibly 45. He testified that he was an experienced driver and that he had averaged some 50,000 miles of driving per year for the past 7 years. He was also familiar with this particular road, having traversed it about once a month. Defendant testified that just north of Cedar Springs as he drove

up an incline toward the crest of a slight hill he noticed a car approaching from the opposite direction trespassing slightly over the line marking the center of the highway; that in order to avoid a collision he turned his car in the direction of the right-hand shoulder which was muddy; that the front and rear right wheels went on to the shoulder and in his effort to get back on to the pavement one of the wheels was momentarily held back by the edge of the pavement and as a result the car turned or skidded toward the opposite side of the road in front of an oncoming Chevrolet car proceeding in a northerly direction. The cars collided and as a result both were badly wrecked and decedent died from the injuries incurred. Defendant was also injured and received workmen's compensation. The wreckage of the cars, as shown by the exhibits, indicates that they met with great force.

A witness for plaintiff testified that while he (the witness) was driving south about a mile and seven-tenths north of the point of the accident a Lincoln car, which he tentatively identified as defendant's, passed him going at the rate of speed of about 70 miles per hour. Another witness for plaintiff, who, while driving north had passed defendant's car just preceding the accident, testified that as defendant approached the point of collision he was "coming at a high rate of speed, very high rate of speed  *  *  * I would have judged between 80 and 90 miles an hour." A third witness testified that somewhere between 15 and 20 miles north of the point of collision, as the witness was driving his truck north on the same highway, he saw a Lincoln, to the best of his judgment, defendant's car, go off the road onto the shoulder momentarily and then came back onto the highway, coming within 25 feet or so of hitting the back end of the witness' truck. He was of the

opinion that the Lincoln at that time was traveling at 50 miles per hour.

At the end of plaintiff's case the defendant and codefendant moved for directed verdicts on the grounds that as a matter of law defendant was not guilty of gross negligence or wilful and wanton misconduct toward his guest, the decedent, and that under the principles of *respondeat superior* codefendant was not liable. The court directed the jury to find no cause of action and a judgment granting the motions was entered. Plaintiff has appealed.

Before considering the facts and the law applicable to this case we must dispose of certain evidentiary objections. Defendants object to the testimony regarding the incident some 15 to 20 miles north of the point where the accident occurred. In view of its similarity to the events just preceding the collision, we do not think its admission an abuse of the judge's discretion in such matters, though its probative value is not particularly high. As regards the witness who testified concerning defendant's speed a mile and seven-tenths from the scene of the collision, we do not think its admission error in view of the contradictory testimony as to defendant's speed at about that time or a little later. See *Shoemaker* v. *Trompen,* 326 Mich 120, 123, 124. Because of the limited time the witness who testified that defendant was going 80 to 90 miles per hour had to form this opinion, defendants argue that such testimony is inadmissible. While the peculiar circumstances further made judging difficult, the admission of this evidence was not an abuse of the discretion which is lodged in the judge in such matters. We cannot say that as a matter of law the witness had no real opportunity to make an observation of the circumstances and existing conditions. Whether he could do it correctly or not was for the jury to decide. Defendant was cross-examined by plaintiff under

the statute.* Among other things he testified to, he stated that he slowed down on account of the slippery condition of the highway and that he was driving at a moderate rate of speed. Defendants contend that plaintiff is bound by this testimony as to defendant's intention and state of mind. To be sure his testimony must be considered as a whole. See *Schaupeter* v. *Schaupeter,* 317 Mich 84. However, in a case such as this defendant's state of mind and intention is inextricably related to the speed at which he was traveling. That speed is a fact in dispute, and the testimony thereto being contradictory plaintiff is not bound by defendant's testimony. *Swank* v. *Croff,* 245 Mich 657; *Schaupeter* v. *Schaupeter, supra; In re Estate of Taylor,* 271 Mich 404.

The principal question is whether under the evidence, when considered in a light most favorable to plaintiff, a jury question was presented. The elements of "gross negligence or wilful and wanton misconduct" upon which defendant's liability is predicated under the guest act, CLS 1952, § 257.401 (Stat Ann 1952 Rev § 9.2101), are set forth in *Titus* v. *Lonergan,* 322 Mich 112, 119:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another."

We have said that under the circumstances of the case in order to establish gross negligence or wilful and wanton misconduct "it is necessary for plaintiff to show that defendant continued to drive

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

in reckless disregard of known and dangerous conditions after knowledge of the same." *Stolt* v. *Shalogian,* 326 Mich 435, 439. While excessive speed of itself is insufficient to impose liability under the guest act, it may be considered in connection with other circumstances in determining whether the operator of the automobile was guilty of gross negligence or wilful and wanton misconduct. *Titus* v. *Lonergan, supra.*

We have reviewed a great many decisions involving the element of excessive speed when combined with other factors such as conditions of weather and highway. They are so numerous and in some instances so irreconcilable with other decisions that it would serve no purpose to here set forth in detail each one for the purpose of distinguishing or following it. It suffices that we note a few of them. See *Piscopo* v. *Fruciano,* 307 Mich 433; *Coppin* v. *Lippy,* 299 Mich 586; *Hodge* v. *Beaman,* 294 Mich 442; *Thompson* v. *Ross,* 292 Mich 450; *Eskovitz* v. *Berger,* 276 Mich 536; *Keilitz* v. *Elley,* 276 Mich 701; *Rowe* v. *Vander Kolk,* 278 Mich 564; *Pawlicki* v. *Faulkerson,* 285 Mich 141; *Balcer* v. *Pere Marquette R. Co.,* 266 Mich 538; *In re Mueller's Estate,* 280 Mich 203. Though with the exception of 1 or 2 these cases do not involve speeds in excess of 80 miles per hour, some of them point to a result in defendants' favor. We must, however, take account of more recent decisions of our Court. In so doing we find that in *Cramer* v. *Dye,* 328 Mich 370; *Kocks* v. *Collins,* 330 Mich 423; *Price* v. *Western,* 330 Mich 680; and *Cain* v. *Enyon,* 331 Mich 81, we held in effect that excessive speed plus a persistent refusal to heed warnings from passengers, *inter alia,* raises a jury question as to the existence of gross negligence or wilful and wanton misconduct. This was somewhat of a reversal of our previous position. See *Sherman* v. *David,* 293 Mich 489. Here there

is no proof of any warning given to defendant. The lips of the guest passenger are sealed by death. However, a refusal to heed warnings is not necessary to recovery, and the latest cases are cited merely as an indication that this Court might in some cases be re-examining its position in light of modern conditions. While in *Horton* v. *Fleser,* 340 Mich 68, 73, we stated that:

"We did not in the *Price Case* expressly or impliedly overrule previous decisions or promulgate any change in requirement that wilful and wanton misconduct must be found,"

we went on to say that:

"Our observation was made only for the purpose of restricting the discretion of the trial judge in such cases for the purpose of preventing him from usurping the jury's proper function as a trier of the facts."

We are not here promulgating any change in the requirement that wilful and wanton misconduct must be found. However, we may be enlarging that area in which the question of the existence of gross negligence or wilful and wanton misconduct becomes a matter for the jury. To that extent and to the extent that this decision may not be in complete accord with previous analogous decisions, we decline to follow them. Each case is *sui generis* in its factual circumstances. In view of the facts in this case we feel the issue was properly one for the jury to determine.

In directing the jury to bring in a verdict of no cause of action the court charged, in regard to the liability of codefendant:

"Russell Coeling was an employee of the Empire Lumber Company. The Empire Lumber Company hired him as a salesman. The Empire Lumber Company didn't authorize him to carry guests with him.

The Empire Lumber Company didn't know he had taken a guest on this occasion. The Empire Lumber Company cannot possibly be responsible in this case. Rinkevich wasn't working for them. He wasn't helping their employee, Coeling, in the business of the company. He was simply an invited guest. There can be no liability."

Codefendant further argues on appeal that in any event the doctrine of *respondeat superior* is not applicable to wilful and wanton misconduct by an employee.

From the record before us it cannot be said that as a matter of law Coeling was not operating the automobile in the course of his employment. Apparently he and decedent were on a combined business and fishing trip and at the time of the accident they were going to Rockford to visit a customer and, thence, to the nearby Rogue river to fish. However, this does not necessarily fix liability upon codefendant, for the scope of employment must be considered. It does not appear that decedent was there for any purpose other than for the fishing. It was a fishing trip for him as far as the present record shows. The record shows that Coeling was using his own car, as he customarily did, though he was reimbursed for gas and oil, that he was not authorized to take guests, that he had not done so before, and that codefendant had no knowledge of decedent's presence. While we have indicated in a number of cases that disobedience to instructions or orders of the employer does not necessarily preclude liability, *Brinkman* v. *Zuckerman,* 192 Mich 624, 627; *Nord* v. *West Michigan Flooring Co.,* 238 Mich 669, 674; *Loux* v. *Harris,* 226 Mich 315, 319; *cf., Breger* v. *Feigenson Brothers Co.,* 264 Mich 37, 40, 41 (where, however, elements of waiver or acquiescence by the employer were present), we have held in at least 2 cases involving injuries to guest passengers that viola-

tion of an employer's instructions or the lack of authorization regarding such guests absolved the employer from liability. *Chajnacki* v. *Dougherty,* 254 Mich 296; *Schulwitz* v. *Delta Lumber Co.,* 126 Mich 559. In *Metropolitan Life Ins. Co.* v. *Gosney* (CCA), 101 F2d 167, 171, a case involving a suit against a master for injuries sustained by a guest of a servant while the latter was operating his own automobile in the business of the master, the Court adhered to and set forth the "general rule that an employee using an automobile in his employer's business has no implied or apparent authority to invite others to ride with him, and that, if a passenger who accepts the unauthorized invitation of the employee is injured, the employer is not liable, for the reason that the passenger is not a guest of his but merely a guest of his employee." (Citing a number of cases including *Chajnacki* v. *Dougherty, supra.*)

See, also, 14 ALR 145; 62 ALR 1167; 74 ALR 163; 57 CJS, Master and Servant, § 570d(3), p 308; 5 Am Jur, Automobiles, § 394, p 729. However, apparently there is an exception to this rule where the employee is guilty of wilful and wanton misconduct. See *Liggett & Myers Tobacco Co.* v. *De Parcq* (CCA), 66 F2d 678, 685, and authorities above cited. Presumably, the Court was referring to this exception in *Chajnacki* v. *Dougherty, supra,* at 298, when it said:

"In the instant case it is not claimed that the driver was guilty of wanton or wilful misconduct.".

The supposed exception to the rule is not without its dissents. See *Greeson* v. *Bailey,* 167 Ga 638 (146 SE 490). However, we will not here decide the present status of Michigan law as to the rule or its apparent exception in the case of wilful and wanton misconduct on the part of the employee.

The case should be remanded for a determination of whether the employee was in fact guilty of wilful and wanton misconduct. If he was not, the question of law here raised need not be decided. If he was, the question of law may then become pertinent, but in view of the circmumstances of this case we do not determine it at this time. The directed verdict came at the close of plaintiff's proofs. We feel the record incomplete in its treatment of the nature and extent of the trip taken by decedent and defendant. It is ambiguous as to whether the fishing was incidental to the business or vice versa. Then too, the record is ambiguous as to whether defendant was not authorized to take guests in his own car (in the sense that nothing about guests was said by codefendant) or whether codefendant affirmatively prohibited him from doing so. In view of these circumstances we decline to pass upon codefendant's liability as a matter of law at this time without a more complete record.

Defendant identified plaintiff's proposed exhibit number 17 as being a note from himself to decedent's wife. It read as follows:

*"Dear Jean,*

"Sorry you were not at home, I wanted to talk with you, but will see you in the very near future— I left Pete's boots & cap in the stair closet—We are sending you a turkey and other things for Thanksgiving, so don't plan on buying anything. We also have some financial help in store for you,—Will see you soon—

Russ"

The trial court sustained the objection that the note was wholly immaterial and incompetent, saying that "There is nothing in this note that constitutes any admission of liability."

In *Murner* v. *Thorpe*, 284 Mich 331, 336, we noted that statements by a party which furnish a basis for an inference that the speaker considers himself liable for negligence are properly permitted to be shown as an admission of liability. In that case we specifically held that the statement, "Go ahead; I hope she wins," made by the defendant father of the driver of the car which injured the plaintiff when informed of the possibility of suit against him, was admissible. However, in *Kinney* v. *Folkerts*, 78 Mich 687, 702, one of the defendants in a negligence action told a third party to tell plaintiff "that the company would see him through all right, and not to worry, and that that would do him more good than all the medicines, or all the doctors, could do for him." The Court there held this to be "in no sense a confession or admission of liability." In *Murner* v. *Thorpe, supra,* the court distinguished the statement made in the *Kinney Case, supra* (p 336), by saying:

"Such statement is not inconsistent with a benevolence of character, which, however, does not assume blame or admit fault."

This is applicable to the instant case where at most the note is a sympathetic offer, indicating possibly a feeling of moral responsibility, but is not proper evidence from which the jury could infer a recognition or admission of liability. It was properly excluded.

The judgment of the trial court should be reversed and the case remanded for a new trial, with costs to appellants.

SMITH, REID, and KELLY, JJ., concurred with BUTZEL, J.

Sharpe, J. (*for affirmance*). I am not in accord with the opinion of Mr. Justice Butzel for reasons hereinafter stated. An additional fact to be considered is that the collision occurred on a paved highway 20 to 22 feet in width.

If plaintiff is to recover in the instant case upon the theory of gross negligence on the part of defendant, Russell Coeling, she must rely upon the speed that defendant was traveling at the instant of collision as well as the condition of the highway and atmospheric conditions. I am unable to find any substantial evidence as to the speed of defendant's car at the instant of collision or at the time his car left the highway, but his speed prior to the collision has a relationship on the issue of speed involved in this case. The evidence relating to speed comes from 3 witnesses produced by plaintiff. Wayne Arendsen testified that a Lincoln automobile, some 15 to 20 miles north of the scene of the accident, had gone around an S-curve at approximately 50 miles per hour and barely missed striking his vehicle. The trial court permitted this evidence to be introduced, but its value, if any, is negligible.

Sherwood Casterline, another witness produced by plaintiff, testified that he was driving south on US-131, and at a point about 2 miles north of where the collision occurred, a Lincoln automobile traveling approximately 70 miles per hour passed him. He also testified:

"About 2 miles north of Cedar Springs a dark car passed me. I don't know whether it was blue or black. I know it was a 2-door car because there was only 1 door on 1 side. I observed the car for about 5 seconds. I couldn't see the tires. I do not know its license number. It had 1 window in the rear. The window was an oval-shaped window. I do not know what model it was, but I think it was approxi-

mately a 1949. I don't know how many people were in the car. I was alone."

I think this evidence was properly submitted to the jury, but it should be noted that the testimony of this witness relates solely to the matter of speed.

Orie Vander Boon also testified in behalf of plaintiff. He stated that he was traveling north on the highway in question at a speed of 50 to 60 miles per hour and saw a Lincoln car traveling south at a speed of approximately 80 miles per hour. He testified:

"*A.* Well, I would have judged between 80 and 90 miles an hour, and as he was coming toward me, the pavement was wet, it seemed to be kind of a slight drizzling rain, if I remember right, and he, instead of—I don't know just—he kind of angled as if he thought he was on the road, he kind of angled right off on the shoulder of the road and went right straight.

"As you leave Cedar Springs, the road curves a little to the right. I passed the Chevrolet. I believe I was past him before I got up on the knoll. By the time my car got to the crest of the hill, I was on the right-hand side, my side. As I got to the crest, I saw this Lincoln automobile. It would be very hard to say appproximately how far away it was when I first saw it. It was quite a distance when I saw it. It is very hard to say. Looking at plaintiff's exhibit number 2, I remember seeing the automobile in the foreground at the scene of the accident. Plaintiff's exhibit number 2 is a fair representation to me of what the terrain looked like looking north as I got to the top of the hill. Looking at the picture, when I first saw the Lincoln, it was coming around the bend in the road. There were no other cars travelling in the same direction as the Lincoln at that time. There were no other cars travelling in my direction in front of me. I believe there was a drizzling rain. The highway was wet. I am

certain of that because he slipped off the highway. I saw him go off the highway, and then as he tried to, seemed to try to get his car back on he went into a sidespin and passed me going forward, and the rest I had to see in my rearview mirror, which I did. I slowed my car down when I saw him coming and got off the shoulder for fear I might be killed and get hit. I saw him skid sideways directly in front of this Chevrolet. As he skidded in front of the Chevrolet, there must have been the impact. He was directly in front of that Chevrolet. I was about 300 or 400 yards ahead of the Chevrolet at that time, but I am not positive of that. The Lincoln car was a '49 to '51. They all have the same body style. I can't say for sure. I did not notice the body style until after the accident.

"After the accident, I immediately turned around and went back to the cars. I looked at them at that time. As the Lincoln car passed me, I observed 2 men in the front seat. I didn't notice any in the back seat. One thing in particular I observed about the man that was driving was that he was laughing as he went by me on the shoulder of the road.   *   *   *

"Even if the curve is 3/4 of a mile away, I think I saw him coming at the curve. That is what I still think. When he was off the shoulder of the road, he did not come back on the road fast. *He skidded for some distance on his side of the road and very gradually angled across in front of the Chevrolet.* He was close enough so that I could see that there was going to be a collision. He was quite a ways behind me when the collision took place. He may have been 300 to 500 yards behind me. (Emphasis supplied.) *   *   *

"*Q.* And then, in other words, this fellow came right back on the road and directly in back of the northbound car right behind you?

"*A.* Not that close. All very gradual. He didn't flip right across the road, but very gradually got back on the road."

From the above evidence it clearly appears that if plaintiff is to recover, she must plant her case upon the speed that defendant was traveling in order to establish gross negligence or wilful and wanton misconduct.

It is not always possible to mark with exact nicety a line which may be said to be the boundary between ordinary negligence and gross negligence or wilful and wanton misconduct. However certain guideposts have been established to differentiate between the 2 kinds of negligence.

It is a general rule that excessive speed, unless accompanied by wilful and wanton misconduct, is insufficient to impose liability under the so-called guest act. In *Bushie* v. *Johnson,* 296 Mich 8, defendant Gallagher, the driver of the car, drove at a speed of 60 or 70 miles per hour and sort of zigzagged on a curved road. The jury rendered a verdict for plaintiff, but the trial court granted defendants' motion for judgment *non obstante veredicto* and entered judgment for defendants. In affirming the judgment, we said at pages 12 and 13:

"Plaintiff relies upon testimony of speed, zigzagging, repeated warnings to the driver, and the driver's statement, 'Watch me give them a real scare.' There was no testimony as to the degree of the curves. Mere excessive speed does not constitute gross negligence. *Balcer* v. *Pere Marquette R. Co.,* 266 Mich 538; *Fink* v. *Dasier,* 273 Mich 416; *In re Mueller's Estate,* 280 Mich 203; *Bielawski* v. *Nicks,* 290 Mich 401. Repeated warnings to the driver to slow down or drive slower do not make the driver guilty of gross negligence. *Bobich* v. *Rogers,* 258 Mich 343; *Pawlicki* v. *Faulkerson,* 285 Mich 141. Noncompliance with the request of a guest passenger relative to speed is not of itself evidence of wilfulness or wantonness. *Bobich* v. *Rogers, supra; Mogill* v. *Resnick,* 263 Mich 103; *Fink* v. *Dasier, su-*

*pra*; *Schlacter* v. *Harbin,* 273 Mich 465. Gallagher's statement, 'Watch me give then a real scare,' does not establish the fact that he was driving in a wanton and reckless manner."

In *Rowe* v. *Vander Kolk,* 278 Mich 564, 570, we said:

"A characteristic element in many, if not all, of the cases in which this Court has held a question of fact was presented under the guest act is that there was continued persistency in defendant's course of misconduct after ample warning, or after it became apparent that continuance of such misconduct would result in injury to the defendant's guests."

In *Stolt* v. *Shalogian,* 326 Mich 435, 439, we said:

"In order to establish 'gross negligence or wilful and wanton misconduct' under the circumstances of this case it is necessary for plaintiff to show that defendant continued to drive in reckless disregard of known and dangerous conditions after knowledge of the same."

In *LeGroh* v. *Bennett,* 271 Mich 526, defendant was driving on a paved highway 40 feet wide, and at a speed of 50 to 60 miles per hour. The road was slippery. It was dark and raining, with a heavy fog, and objects were discernible only for a distance of 12 to 15 feet ahead. Defendant attempted to pass a car on the easterly side of the highway, the car swerved to the left, hit the rear end of a trailer on a cartage truck, glanced over to the right-hand side of the highway, describing an arc, coming back on to the left-hand side of the highway, and there crashed into a heavy freight truck on the westerly lane of traffic of the highway, resulting in the death of 3 of the occupants of the car. We there held that defendant was not guilty of gross negligence. It is a general rule that excessive speed, unless accompanied by wilful and wanton misconduct is in-

sufficient to impose liability under the so-called guest act, see *Bushie* v. *Johnson, supra.*

For cases holding that the driver of the car was not guilty of gross negligence or wilful and wanton misconduct, see *Bobich* v. *Rogers,* 258 Mich 343; *Willett* v. *Smith,* 260 Mich 101; *Grabowski* v. *Seyler,* 261 Mich 473; *Mogill* v. *Resnick,* 263 Mich 103; *Elowitz* v. *Miller,* 265 Mich 551; *Turney* v. *Meyer,* 266 Mich 87; *Balcer* v. *Pere Marquette R. Co.,* 266 Mich 538; *LeGroh* v. *Bennett,* 271 Mich 526; *Fink* v. *Dasier,* 273 Mich 416; *Schlacter* v. *Harbin,* 273 Mich 465; *Holmes* v. *Wesler,* 274 Mich 655; *Keilitz* v. *Elley,* 276 Mich 701; *Riley* v. *Waters,* 277 Mich 620; *Rowe* v. *Vander Kolk,* 278 Mich 564; *In re Mueller's Estate,* 280 Mich 203; *Pawlicki* v. *Faulkerson,* 285 Mich 141; *Thompson* v. *Ross,* 292 Mich 450; *Hodge* v. *Beaman,* 294 Mich 442; *Coppin* v. *Lippy,* 299 Mich 586; *Piscopo* v. *Fruciano,* 307 Mich 433.

However, we held in *Kocks* v. *Collins,* 330 Mich 423, 427, that continued persistency in a course of conduct, after ample warning, presented a question of fact as to whether defendant was guilty of gross negligence. The facts which determined this issue were as follows:

"The defendant drove at a speed greatly in excess of the lawful speed; he disregarded the reasonable expostulations and warnings of his guests, and in one instance increased his speed in response to a warning. The negligent conduct began the instant the defendant started his vehicle and continued until the accident occurred. The defendant knew that north of the railroad there was a dirt road. He was bound to observe that the shoulders were rough and rugged, and that there was a ditch on the right (north) side of the road, and further, that the vehicle ahead of him was proceeding at a much less speed than he and both passengers warned the defendant driver not to pass the car ahead."

For cases holding that a question of fact was presented as to the gross negligence of defendant, see *Manser* v. *Eder,* 263 Mich 107; *McLone* v. *Bean,* 263 Mich 113; *Goss* v. *Overton,* 266 Mich 62; *Schneider* v. *Draper,* 276 Mich 259; *Lucas* v. *Lindner,* 276 Mich 704; *Wolfe* v. *Marks,* 277 Mich 154; *Malicote* v. *De-Bondt,* 281 Mich 650; *Rattner* v. *Lieber,* 294 Mich 447; *Greimel* v. *Fischer,* 305 Mich 45; *Rogers* v. *Merritt,* 307 Mich 459; *Titus* v. *Lonergan,* 322 Mich 112; *Davis* v. *Hollowell,* 326 Mich 673 (15 ALR2d 1160); *Cramer* v. *Dye,* 328 Mich 370; *Price* v. *Western,* 330 Mich 680; *Cain* v. *Enyon,* 331 Mich 81; *Horton* v. *Fleser,* 340 Mich 68.

In the case at bar I am impressed with the fact that the element of deliberate recklessness is lacking. The most that can be said of defendant's driving was that of ordinary negligence. Under this record there is no testimony that defendant was guilty of gross negligence or wilful and wanton misconduct in omitting to use care and diligence to avert a threatened danger after he was chargeable with knowledge of such danger.

When I consider the condition of highways today, the improvement in cars as compared to a few years ago, I must conclude that the term "excessive speed" today does not always denote the same miles per hour as in former years. In view of the facts in this case and in the light of authorities heretofore quoted, I am constrained to hold that defendant, Russell Coeling, cannot be charged with wilful and wanton misconduct on the day in question. Under my decision in this case I find it unnecessary to determine the liability of the Empire Lumber Company.

The judgment is affirmed, with costs.

CARR, C. J., and BOYLES and DETHMERS, JJ., concurred with SHARPE, J.