### TIEN v. BARKEL.

1. Automobiles—Guest Passengers—Wilful and Wanton Misconduct—Evidence—Question for Jury.

Evidence presented questions of fact for jury as to whether defendant was operating car in which plaintiff was riding and suffered traumatic amnesia when it collided with a tree after rounding a curve and whether operator was so bent on racing with and overtaking another car as to disregard his own safety and the safety of his passengers and drove in such a manner as to have reason to believe he would injure someone if he persisted but was indifferent whether or not he did, there being evidence that car was driven at speeds of from 10 to 90 miles per hour with only 4 feet separating the cars at times (PA 1949, No 300, § 401).

2. Same—Guest Passengers—Elements of Wilful and Wanton Misconduct.

The elements of wilful and wanton misconduct under the guest passenger act, are (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care

---

References for Points in Headnotes

[1] 5A Am Jur, Automobiles and Highway Traffic §§ 498, 499, 1041.
[2] 5A Am Jur, Automobiles and Highway Traffic § 532.
[3] 5A Am Jur, Automobiles and Highway Traffic § 1091 et seq.

and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another (PA 1949, No 300, § 401).

3. SAME—GUEST PASSENGERS—EYEWITNESSES—PRESUMPTIONS—RE-
QUEST TO CHARGE.

Denial of defendants' request to charge, in guest passenger's action against host and owner of the car in which plaintiff and the driver became involved in an accident which killed the other 3 occupants and resulted in traumatic amnesia for plaintiff and defendant host, that defendants' car was presumed to have been driven at a lawful speed unless and until it is overcome by credible evidence *held*, proper, where evidence as to speeds at which car had been driven, as to host's frame of mind, and distance car traveled after leaving pavement before wrapping around oak tree, did not warrant such an instruction even in the absence of eyewitness testimony (PA 1949, No 300, § 401).

Appeal from Ottawa; Smith (Raymond L.), J. Submitted October 9, 1957. (Docket No. 26, Calendar No. 47,352.) Decided March 5, 1958.

Case by Orville Tien, by his next friend, Alyda Tien, against Earl Barkel and Harold Barkel for injuries sustained while a guest passenger in automobile. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Leo W. Hoffman* and *Frederick D. McDonald,* for plaintiff.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for defendants.

BLACK, J. This is what is known in our books as a guest-passenger case. The plaintiff passenger had verdict and judgment, from which the defendant driver and defendant owner appeal. As in most of

·our opinions construing the act of 1929,* the principal issue is whether the plaintiff has presented evidence upon which the jury with legal propriety found the defendant driver guilty of causally connected "gross negligence or wilful and wanton misconduct."

Motions having been duly submitted for judgment notwithstanding the jury's verdict or, in alternative, for new trial, the trial judge prepared and filed a carefully considered opinion which so well analyzes and concludes the stated issue as to impel adoption of the entire relevant portion thereof. We quote and embrace, then, Judge Smith's statement of facts and ruling as follows:

"Orville Tien and Earl Barkel, hereafter referred to as plaintiff and defendant respectively, were in the company of 3 other boys on the night in question. About 30 minutes before the accident in question these 5 boys were observed at a Holland restaurant. Earl Barkel and 1 of the boys entered the car of Miss Dryer without her permission, made some remarks in language not considered proper by the girls present, and left after they were told that they were not welcome. A few minutes later these same 5 boys were in another Holland restaurant where they met up with De Pree and O'Connor. O'Connor was in army uniform. Barkel, observing that O'Connor was a paratrooper, called him a 'Fly-boy' and bowed down with arms extended several times. As De Pree and O'Connor got into their car Barkel and another boy taunted them with the remark: 'Hey you * * * bastards, do you want to waltz a few rounds?' De Pree and O'Connor drove away with Barkel and the other 4 boys in close pursuit.

---

* The cases construing PA 1929, No 19, now incorporated as section 401 of the motor vehicle code, PA 1949, No 300 (CLS 1956, § 257.401 [Stat Ann 1952 Rev § 9.2101]), are collected with fair and informative fact-appraisal of each in Jamieson & Brown's Michigan Automobile Law (2d ed), §§ 26–38 (pursued under same section numbers in 1957 Cum Supp).

"The 2 cars proceeded east on 10th street and turned north to 8th street where De Pree's car was tagged in the rear bumper by the front bumper of Barkel's car. The cars turned east on 8th street where Barkel immediately passed the De Pree car and slowed down to about 10 miles an hour. Some one in the rear seat shook his fist at the De Pree car. De Pree thereupon passed Barkel. De Pree turned north at Lincoln and west on 7th street. Barkel followed De Pree down 7th street at times only 4 feet separating the cars. Both cars turned north on River avenue at which point it appeared that both cars were side by side as they left the intersection.

"The De Pree car was in the lead as the 2 cars entered Butternut drive outside the city limits. At this point De Pree testified that he put his car into passing gear and accelerated to more than 80 miles an hour. North of the intersection of James street and Butternut drive, a witness who was driving south on Butternut, stated that the 2 cars were about a block apart and appeared to be going between 80 and 90 miles an hour. De Pree and O'Connor continued to observe the Barkel car behind them, O'Connor stating that as they entered the curve he believed that the Barkel car was 600 to 800 feet back. De Pree testified that he slowed down to about 60 miles an hour in order to make the curve and then accelerated the car to an even greater speed. De Pree continued on down the road without again observing the Barkel car and shortly pulled off the road onto a side road in order to learn whether the Barkel car was coming. After a short wait De Pree retraced his route and discovered the Barkel car had collided with a tree about 500 feet beyond the curve.

"Three of the boys in the Barkel car were killed outright with Barkel and Tien surviving. The Barkel car appeared to have struck the tree in question with great force. There was physical evidence from which the jury could conclude that the Barkel car left the pavement on the curve 520 feet from the

tree it struck, that the car was being accelerated even while it was on the shoulder of the road, that it struck a stump of a tree, left the ground for some distance and came to rest against a large tree. The record contains further gory details from which the jury could determine the force involved in the collision.

"In their oral argument the defendants conceded that there was a question of fact for the jury on the question of who was operating the Barkel car.

"Defendants contend that there was no evidence of gross negligence or wilful or wanton misconduct, that the proofs only showed the happening of an accident and that the jury was left to speculate as to the cause.

"The latest expressions of the Supreme Court indicate that the elements of gross negligence have not been changed as they are applied to the 'guest act.' However there has been some shifting of the court's function in the trial of these cases, the Supreme Court having stated that the trial court should be aware of a larger area in which it is the jury's prerogative to determine gross negligence. *Rinkevich* v. *Coeling,* 344 Mich 493, at page 499.

"Was Barkel in a reckless mood? Was he giving the normal attention to his duties as driver of a motor vehicle as required? Was he making a proper use of his motor vehicle and of the highway he was traveling? Or was he intentionally throwing caution to the four winds and concentrating on racing with and overtaking the De Pree car? In the opinion of the court there was room for a finding by the jury that Barkel recklessly disregarded his own safety and the safety of his passengers and that he was driving in such a manner so as to have reason to believe he would injure someone if he persisted, but that he was indifferent whether or not he did."

Of all recorded decisions involving the proviso as added by the act of 1929, the recent case of *Peyton* v. *Delnay,* 348 Mich 238, probably draws nearest to

the case before us so far as concerns ultimate and pivotal facts. We adopt *Peyton* as authoritative here and do so with observation that this record discloses, with comparably greater clarity than does *Peyton,* evidence of wilful and wanton misconduct. It is pure understatement to say that the facts, and near irresistible inferences from facts as gathered in Judge Smith's opinion, support a finding that young Barkel's mental state and purpose—as and after defendants' car wheeled away from the second restaurant—was both rash and foolhardy and that his continued driving behavior amounted to statutory gross negligence. Causal connection between such driving behavior and plaintiff's injuries having been established, it follows that the trial judge did not err in refusing to direct a verdict for defendants and that the motion for judgment notwithstanding verdict was properly denied.

It is quite unnecessary to attempt, on favorable view, determination by inference of young Barkel's continuant purpose between challenge at the restaurant and sickening end of the pursuit. That is what juries are for, given evidence such as this group of sworn citizens considered. Whether the intent was that of an extended and obviously dangerous automobile race, or whether it was that of driving his father's car in such manner as to goad the young paratrooper and his companion into an ultimate 5 to 2 fight, the result so far as regards this motion for instructed verdict must be the same. The proof viewed in plaintiff's favor imputes to the defendant driver all elements necessary to constitute wilful and wanton misconduct, which elements are defined in *McLone* v. *Bean,* 263 Mich 113, 115, as follows:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the

means at hand; (3) The omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another."

We should not leave the subject of present discussion without having written into our scroll a short measure of advices for bench and bar. Mr. Justice Butzel, writing in *Rinkevich* v. *Coeling,* 344 Mich 493, for a then presciently enlightened half of the Court, asserted in accurate sum (page 499 of report) that each of these guest-passenger cases is *sui generis* in its factual circumstances. He said, too, for the same bisection of our Court, that Michigan decisions construing the mentioned proviso "are so numerous and in some instances so irreconcilable with other decisions that it would serve no purpose to here set forth in detail each one for the purpose of distinguishing or following it." (p 498 of report) To this—amen. We conclude the confessional with definite declaration of support of that which Judge Smith drew from *Rinkevich,* that is to say, we agree that this Court has now arrived at the point of "enlarging that area in which the question of the existence of gross negligence or wilful and wanton misconduct becomes a matter for the jury." (p 499 of report of *Rinkevich*) *Peyton* v. *Delnay, supra,* decided while this appeal by defendants was pending, lends authoritative force to Mr. Justice Butzel's opinion in *Rinkevich.*

The conclusion just announced pursues, of course, the general trend of our current decisions in negligence cases starting with *Clark* v. *Shefferly,* 346 Mich 332, and echoed most recently in *Davis* v. *New York Central R. Co.,* 348 Mich 262. It leads to the same general rule as was laid down on request of counsel in *Carver* v. *Detroit & Saline Plank Road*

*Co.*, 61 Mich 584, 591.* Whether the given motion for instructed verdict tests the sufficiency of evidence as proving ordinary negligence (or disproving contributory negligence) on the one hand, or as proving wilful and wanton misconduct under the statute on the other, the doubtful case in each instance calls for jury instruction and jury verdict rather than a verdict by order of the court.

What negligence case—ordinary or gross—is doubtful and what such case is not will always burden and perplex lawyers and judges. This is so since the controversy turns not upon applicable rules of law but upon their application to the facts. True, it will be said—just as it was when *Carver's* opinion arrived threescore and 10 years ago—that this rule addressed to "cases of doubt" is in itself one of doubt and that it leaves the boundary between jury verdict and commanded verdict in an approximate state of uncertainty. We agree, yet deplore not. The complaint is inherent in negligence law and supplies the underlying reason for respective functions of judge and jury in negligence cases. We shall never attain that certainty of a "slot for every case" precisianists demand, and judges will not aid the cause of truth by acting or speaking otherwise. Cardozo tells us ("The Nature of the Judicial Process," p 166):

"I was much troubled in spirit, in my first years upon the bench, to find how trackless was the ocean on which I had embarked. I sought for certainty. I was oppressed and disheartened when I found that the quest for it was futile. I was trying to reach land, the solid land of fixed and settled rules, the paradise of a justice that would declare itself by tokens plainer and more commanding that its pale and glimmering reflections in my own vacillating

* See discussion of *Carver* in *Kaminski* v. *Grand Trunk Western R. Co.*, 347 Mich 417, 419, 420.

mind and conscience. I found 'with the voyagers in Browning's "Paracelsus" that the real heaven was always beyond.' As the years have gone by, and as I have reflected more and more upon the nature of the judicial process, I have become reconciled to the uncertainty, because I have grown to see it as inevitable."*

The next question of moment is presented by refusal of the trial judge to grant defendants' request to charge No. 13. It reads:

"You are instructed that the presumption is that every man obeys the law and the presumption in this case is that the Barkel automobile at the time of the accident in which plaintiff was injured was traveling at a lawful rate of speed and was being operated in a lawful manner. This presumption takes the place of evidence, and it shall prevail and control your deliberations unless and until it is overcome by credible evidence."

Counsel refer to proof in the record tending to establish that the plaintiff and the defendant driver suffer alike—since the accident—from traumatic amnesia. They point to the absence of genuine "eyewitness" testimony to the final acts or omissions of the defendant driver. On these premises and strength of *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867), it is said that the quoted request should have been granted.

---

* Later on, and in "The Growth of the Law," this great benefactor of our jurisprudence pursued his syllogism to the ultimate thereof — the student-revered "pain at every step" expression. We quote (pp 66, 67): ·

"We seek to find peace of mind in the word, the formula, the ritual. The hope is an illusion. We think we shall be satisfied to match the situation to the rule, and, finding correspondence, to declare it without flinching. Hardly is the ink dry upon our formula before the call of an unsuspected equity — the urge of a new group of facts, a new combination of events — bids us blur and blot and qualify and even, it may be, erase. The counterdrive — the tug of emotion — is too strong to be resisted. * * * There is nothing that can relieve us of 'the pain of choosing at every step.' "

The unqualified premises of such request are a bit strong for the adduced proof. There is evidence that the defendants' car, after it left the pavement, traveled 520 feet on land and in air prior to striking—right broadside and with tremendous wraparound force—what the photographs portray as an impregnable old oak tree. Further, the request presumes to accept without question the testimony tending to show amnesia of plaintiff and defendant Earl Barkel, which testimony whether disputed or not was for evaluation by the jury (see collection of cases in *Cebulak* v. *Lewis,* 320 Mich 710, 718–720 [5 ALR2d 186]). In these circumstances it is gently suggested that the trial judge would have erred had he unconditionally informed the jury, in the language of such request, that defendants' car was presumptively "traveling at a lawful rate of speed."

Any request to charge aimed toward utilization by the jury of the presumption of due care should have been couched according to rules given in *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410 (see in this connection the respective opinions of *Hett* v. *Duffy,* 346 Mich 456; and *Detroit Automobile Inter-Insurance Exchange* v. *Powe,* 348 Mich 548). We hold that the quoted request was rightly denied.

No other question requires discussion. Affirmed, with costs to plaintiff.

KELLY, SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.

DETHMERS, C. J., and CARR, J., concurred in the result.

KAVANAGH, J., took no part in the decision of this case.