### ASHFORD v. PLATT

1. MOTIONS—DIRECTED VERDICT—EVIDENCE.

   On a motion for directed verdict, the trial court must view the evidence presented in the light most favorable to the party against whom direction is sought.

2. MOTIONS—DIRECTED VERDICT—RECORD.

   A motion for directed verdict may only be granted where, on the issue directed, the record is such that reasonable minds could not differ.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur, Trial § 355 et seq.
[3, 5] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 487–489.
[4] 53 Am Jur, Trial §§ 361, 367–370.

3. AUTOMOBILES—GUEST PASSENGERS—GROSS NEGLIGENCE—WILLFUL
AND WANTON MISCONDUCT—ELEMENTS OF TORT.

> The elements of willful and wanton misconduct under the guest
> passenger statute are (1) knowledge of a situation requiring
> the exercise of ordinary care and diligence to avert injury
> to another, (2) ability to avoid the resulting harm by ordinary
> care and diligence in the use of the means at hand, and
> (3) the omission to use such care and diligence to avert the
> threatened danger, when to the ordinary mind it must be
> apparent that the result is likely to prove disastrous to another
> (MCLA § 257.401).

4. MOTIONS—DIRECTED VERDICT—EVIDENCE—TRUTHFULNESS.

> Where a verdict is directed based upon the truthfulness of the
> testimony of a witness, there should be nothing in the cir-
> cumstances or surroundings that tends to impeach him or
> to discredit his statements.

5. NEGLIGENCE—EVIDENCE—GROSS NEGLIGENCE.

> Uncontradicted testimony that defendant was weaving back
> and forth while driving 65 to 70 miles per hour down a loose
> gravel road, pitted with chuckholes, while ignoring numerous
> warnings by his three passengers, where all these elements
> except the warnings are supported in substance by testimony
> of defendant's witnesses, and testimony by a state policeman
> that he smelled alcohol on defendant's breath after the accident
> in suit, could not allow reasonable minds to differ in con-
> cluding that defendant was guilty of gross negligence.

Appeal from Genesee, John W. Baker, J. Sub-
mitted Division 2 February 3, 1970, at Lansing.
(Docket No. 6,929.) Decided February 27, 1970.

Complaint by Clinton Ashford, Georgia Johnson,
Otis Johnson and Gertrude Williams against Willie
T. Platt, an uninsured motorist, for damages result-
ing from an automobile accident. Action defended
for the accident claims fund by the Secretary of
State. Directed verdict for plaintiff. Defendant
appeals. Affirmed.

*C. Robert Beltz,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke,* Assistant Attorney General, and *Henry G. Marsh,* Special Assistant Attorney General, for defendant.

Before: Lesinski, C. J., and McGregor and V. J. Brennan, JJ.

Lesinski, C. J.    Plaintiffs brought the instant suit to recover damages under the guest passenger statute[1] for injuries sustained due to defendant's alleged gross negligence. Defendant Platt was an uninsured motorist and the record discloses that he was not served with a copy of the summons and complaint. Under the Motor Vehicle Accident Claims Act,[2] plaintiffs served the Secretary of State with a summons and complaint. The Secretary of State has defended the case both below and in this Court. Defendant Platt did not appear at trial and apparently has not been located to date. From judgment for plaintiffs, defendant brings this appeal as of right.

On August 21, 1966, plaintiffs Clinton Ashford, Georgia Johnson and Gertrude Williams were passengers in a car owned and operated by defendant. While driving on Mount Morris Road near the intersection with Henderson Road in Genesee County, the car went out of control and turned over several times, resulting in   physical injuries to the passengers.[3]

At trial, after the close of defendant's proofs, plaintiffs moved for a directed verdict on the issue

---

[1] MCLA § 257.401 (Stat Ann 1968 Rev § 9.2101).

[2] MCLA § 257.1105 (Stat Ann 1968 Rev § 9.2805).

[3] Plaintiff Otis Johnson sues to recover the medical expenses of his wife, Georgia Johnson, allegedly resulting from the accident.

of liability for gross negligence. The trial court granted the motion, over defendant's objections, leaving for the jury only the issue of measure of damages.[4]

The sole issue raised on appeal is whether the trial court erred in directing the verdict on the issue of gross negligence.

Two well-recognized rules apply in the instant case. On a motion for directed verdict, the court must view the evidence in the light most favorable to the party against whom direction is sought. *McGrath* v. *Hargraves* (1945), 310 Mich 510. A motion for directed verdict may only be granted where, on the issue directed, the record is such that reasonable minds could not differ. *United States Fire Insurance Company* v. *Grand Trunk W. R. Co.* (1955), 344 Mich 270.

The elements of gross negligence or willful and wanton misconduct were set forth in *Tien* v. *Barkel* (1958), 351 Mich 276, 281, 282, as follows:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' "

The *Tien* decision also noted that each guest passenger case is *sui generis* in its factual circumstances and that no purpose is served by detailed examination of the numerous, and in some instances "irreconcilable," decisions construing the term gross negligence.

---

[4] The jury returned verdicts in the amount of $1,500 for Clinton Ashford, $5,000 for Georgia Johnson, $879.87 for Otis Johnson, and $7,000 for Gertrude Williams.

As with all gross negligence cases, an examination of the evidence adduced at trial is necessary. Six witnesses testified to the events surrounding the accident: the plaintiffs,[5] the state trooper who arrived at the scene after the accident, and Mr. and Mrs. Zickafoose, who were riding in their car seven or eight hundred feet ahead of defendant's automobile.[6]

The witnesses were all in basic agreement concerning weather and road conditions. The day was dry and clear. Mount Morris Road had a loose gravel surface, pitted with "small chuck holes" at the time of the accident.

The plaintiffs testified that although defendant's driving had not been unreasonable before turning onto Mount Morris Road, it became quite erratic at that point. Georgia Johnson testified that she rode in the front seat on the passenger side. She stated that she could see the speedometer and that defendant was driving 65 to 70 miles per hour on Mount Morris Road. She repeatedly asked him to slow down, but each time he simply said "okay" and maintained the same speed. She testified that the other passengers made similar requests, only to be met with similar results. She further stated that defendant was weaving across the center of the road. It was her opinion that defendant tried to turn from Mount Morris onto Henderson Road, a right angle turn, but was going too fast. The result was that the car rolled over several times.

Gertrude Williams, who sat in the front between Mrs. Johnson and defendant, also testified that defendant was driving 70 miles per hour and was "zigzagging" down the road. She too stated that she had

---

[5] Reference hereinafter to plaintiffs includes only those who were passengers in defendant's vehicle, unless otherwise indicated.

[6] The estimate of this distance was given by Mr. Zickafoose in his testimony.

warned defendant of his excessive speed and that at one point she had said "Lord, we are going to have a wreck."

Clinton Ashford, who was riding in the back seat, stated that defendant was driving "65, 70—65 miles an hour to my estimation." He stated that after the passengers in the front had asked defendant to slow down and had been ignored, he leaned over the front seat and asked "What's the rush?" Ashford also testified that defendant was weaving back and forth across the road. He was uncertain as to whether defendant tried to turn onto Henderson Road or whether he swerved to avoid a ditch when the car rolled over.

Although the plaintiffs testified that they believed defendant was intoxicated, the three uniformly admitted that they did not see him drinking prior to the accident. They stated that their belief was based solely on defendant's behavior which they alleged to be "reckless."

As these witnesses are all parties, and thus interested in the result of the suit, a question of credibility arises. The general rule regarding the credibility of witnesses was stated in *Michigan Pipe Company* v. *Michigan Fire & Marine Insurance Company* (1892), 92 Mich 483, 488:

"To justify a court in instructing a jury that a witness has told the truth, and in directing a verdict based upon the truthfulness of his evidence, there must be nothing in the circumstances or surroundings tending to impeach the witness, or to throw discredit upon his statements. *If there is anything tending to create distrust in his truthfulness, the question must be left to the jury. Druse* v. *Wheeler,* 26 Mich 195." (Emphasis supplied.)

In the instant case, however, with the sole exception of the alleged warnings given defendant, the sub-

stance of each of the allegations concerning defendant's actions is supported by not only plaintiffs' witnesses, but also the defense witnesses.

Herman Zickafoose, a witness called by defendant, testified that he observed defendant's car in his rearview mirror while riding approximately seven to eight hundred feet ahead of defendant. He stated that he was traveling at about 40 to 45 miles per hour, and that while he could give no exact estimate of defendant's speed, defendant's car "looked as if it was coming pretty fast, and it might be like it was—weaving around in the road." Emma Zickafoose, another defense witness, also testified that she looked back and saw defendant's car "coming at a pretty good speed."

The state trooper, called by plaintiff, stated that when he arrived at the scene the car was lying on its "top or side." It was his opinion that the cause of the accident was excessive speed for the road conditions. He issued a speeding ticket to defendant. He also testified that he could smell alcohol on defendant's breath.

We are, thus, presented with a case where not only are plaintiffs' versions of the accident completely uncontradicted, but also where all the elements tending to establish gross negligence, which are capable of verification by impartial witnesses, are supported by both defendant's own witnesses and the investigating officer from the Michigan State Police. As stated by the Court in *Holbert* v. *Staniak* (1960), 359 Mich 283, 290:

"Where the testimony as to a fact is not disputed, the jury should be instructed to find it accordingly. *Dondero* v. *Frumveller*, 61 Mich 440.

"Where all of the evidence on both sides tends clearly to prove a fact, such fact may, and generally should, be assumed as proved; and in such case a

charge to the jury indicating that it is competent for them to find either way is error. *Druse* v. *Wheeler,* 26 Mich 189."

See, also, *Ortega* v. *Lenderink* (1968), 10 Mich App 190.

Defendant argues that numerous inconsistencies exist in the testimony of the three plaintiffs. A review of the record, however, satisfies us that if inconsistencies exist at all, they are not relevant to the central fact issue of the case, which is: what was defendant's conduct as he drove down Mount Morris road?

We conclude, therefore, that where, as here, there is uncontradicted testimony that defendant was weaving back and forth while driving 65 to 70 miles per hour down a loose gravel road, pitted with chuckholes, all the while ignoring numerous warnings by all three passengers, and where all these elements except the warnings are supported in substance by the testimony of defendant's own witnesses, reasonable minds could not differ in concluding that defendant was guilty of gross negligence. The trial court was correct in directing the verdict on issue of gross negligence.

Affirmed. Costs to plaintiffs.