SANDSTROM v. MINNEAPOLIS, ST. PAUL & SAULT STE.
MARIE RAILWAY CO.

1. APPEAL AND ERROR—DEFINITENESS OF ASSIGNMENT.
   An assignment of error that there is no evidence in the
   case to support a verdict for plaintiff is definite.

2. NEGLIGENCE—EVIDENCE—SUFFICIENCY.
   Evidence held, insufficient to show that children habitually
   played on logs along a railroad track or that any offi-
   cers or agents of the company knew of children playing
   on logs prior to the death of a child which was killed by
   being run over by a log while playing on the logs.

3. SAME—ACQUIESCENCE—LICENSE—CUSTOM.
   Acquiescence in the use of premises—license to use them
   —must depend upon some known customary use.

4. SAME—DEATH—CHILDREN—DIRECTED VERDICT.
   In an action to recover for the death of a child which was
   run over by a log on which it was playing alongside of
   a railroad track, at a point on the bank, three feet above
   a tract of land owned by defendant on which children
   were accustomed to playing, where there was no evidence
   of a license to use the property of defendant, or that the
   depositing of the logs was a new use of the property, or
   that the depositing of the logs created a peril affecting
   any customary use of the premises, held, that a verdict
   for defendant should have been directed.[1]

Error to Delta; Flannigan, J.  Submitted April 18,
1917.  (Docket No. 85. )  Decided September 27, 1917.

Case by John Sandstrom, administrator of the es-
tate of John Morris Sandstrom, deceased, against the
Minneapolis, St. Paul & Sault Ste. Marie Railway
Company for the negligent killing of plaintiff's de-

[1] On origin of doctrine of attractive nuisance, generally, see
note in 19 L. R. A. (N. S.) 1094; 47 L. R. A. (N. S.) 1101.
   Authorities discussing duty of property owner to trespassing
child, see notes in 32 L. R. A. (N. S.) 559; 41 L. R. A. (N.
S.) 274.

cedent.   Judgment for plaintiff.   Defendant brings error.   Reversed.

*G. R. Empson,* for appellant.

*A. H. Ryall* and *James Frost,* for appellee.

In and about its business at Gladstone defendant occupies (and owns) a certain tract of land, having an average width of 1,000 feet and a length of three-fourths of a mile.   People live on land which surrounds it, and there are in its vicinity warehouses and manufacturing plants.   The land is not inclosed; the most of it is not in fact used for any purpose.   People have habitually crossed and recrossed it at convenience or pleasure.   There are numerous paths—worn footpaths —crossing it in various directions.   Upon one portion of it there was a baseball ground, where games of ball were played.   The general condition had existed for years.   Children entered there and played.   There are still some stumps in the field, which, while generally level, has an irregular, uneven surface.   Across it is a "fill" leading down to the docks, and upon this fill, or elevated land, are two railroad tracks.   One of the tracks was formerly used for cars traveling to an ore dock, which defendant once maintained.   Since 1904 it has been used as a storage track, and material piled alongside of it.   Sometimes logs were unloaded along the tracks.   In the winter of 1913-14 logs were so stored along the track; one of them a log 16 feet long and some 2 feet in diameter.   It did not lie exactly parallel with the rails, but did lie upon the upper face of the elevation, or fill, and that part of it farthest from the rails was very near the shoulder of the fill, from which the ground sloped away to the level of the field.   March 14, 1914, was Saturday, and a warm day.   Such snow and ice as remained was melting. Children, among them plaintiff's decedent, a boy 6

years and 10 months old, were upon defendant's premises, in the immediate vicinity of which his parents lived. A girl, 12 years old at the time of the trial, testified that she was on the log when it began to roll, and stepped off. Plaintiff's decedent was astride the log, and did not get off. Unfortunately it rolled upon and killed him. The children had been jumping from one to another of the logs. Another child, a little girl, was also on the particular log, felt it move, and jumped from it.

Indicating the theory of plaintiff's case is the following, taken from the declaration:

"It * * * became and was the duty of the defendant not to place on said property anything of a dangerous character which would be attractive to children, or which would tend to entice them to go upon said property, and it became and was the duty of the defendant not to place upon said property, and especially near the paths running across said property, anything of a dangerous character, so as to change the condition thereof without placing signs of notification and warning thereon, or in some way giving notice to those using said premises of the change of condition, or without guarding it, so that children and other persons who were in the habit of using said property would be protected from any change in the condition of said premises, and from any dangerous thing or device thereon. And it became and was the duty of the defendant to inform and warn all persons, and especially children of any new or unseen danger on said premises, and of any danger arising from anything placed by defendant on said premises. Yet the said defendant, disregarding its said duties toward persons in the habit of using said premises, * * * did carelessly and negligently fail and neglect to observe its duties in that it did place thereon things and devices of a dangerous character, to wit, the logs hereinafter referred to, and which were attractive to children, and did maintain on said premises an attractive nuisance near the paths running across said premises, and did place on said premises things of a dangerous

character, to wit, the logs hereinafter referred to, without placing signs of warning thereon, and did fail to guard said logs, so that children and other persons who were in the habit of using said property were not protected from said dangers, and from the danger arising from playing on said logs, and did not give notice of the change in the condition of said premises, and did not warn said children of the dangers arising from playing on said logs, so that by reason of the premises the said John Morris Sandstrom, without any carelessness on his part, but through the carelessness and negligence of the said defendant, was injured and killed in the following manner, viz.: That said tracks ran on a grade, to wit, three feet higher than the adjoining ground; but that said grade and embankment and also the surrounding ground was rough and irregular, so that the place where the logs hereinafter mentioned were dumped was uneven, irregular, and unstable, and at the time said logs were placed on said premises there was snow and ice on the ground, which snow and ice melted from day to day, thereby changing the condition of the matter on which said logs rested, and rendered them unstable and unsafe, and a short time before the 14th day of March, 1914, the said defendant caused certain logs to be dumped and unloaded from one of its cars onto said vacant premises, and alongside its tracks running through said premises, and near to one of the paths crossing said premises, and upon the uneven ground and embankment and snow herein referred to. That said logs were not piled in an orderly manner, but were thrown off of said cars loosely, and permitted to remain as they fell from said cars, and were so placed that, because of snow and ice on which they rested, and because of the insecure manner in which said logs rested on the ground, and on the slope of the embankment near said track, said logs were likely to roll and fall upon any person touching or moving or being upon said logs, and that the said John Morris Sandstrom, together with other children, on the said 14th day of March, 1914, went upon said premises, and being attracted by said logs, which had recently been placed thereon, went upon said logs, and played thereon, and that thereupon, while said children and said John

Morris Sandstrom were playing on one of said logs. one of said logs rolled and fell from the position in which it was then, and rolled and fell upon the said John Morris Sandstrom, and injured him, so that he died instantly."

Plaintiff says:

"This case is based on the right of a licensee to protection against active changes in the premises, through which an injury is inflicted."

And again:

"As previously stated, this case is based on a theory which has always been recognized by this court, but which was elucidated and reaffirmed in *Morrison* v. *Carpenter*, 179 Mich. 207 (146 N. W. 106, Am. & Eng. Ann. Cas. 1915D, 319), where Justice STONE went thoroughly into all of these questions, and drew the clear distinction between a situation of this sort, and such as was presented by *Ryan* v. *Towar*, 128 Mich. 463 (87 N. W. 644, 55 L. R. A. 614, 92 Am. St. Rep. 560), or any of the more recent cases cited by defendant."

And the question submitted to the jury was finally put to them in this way:

"I have endeavored to make it clear to the jury that if the railway company had been accustomed to store these logs in the manner in which the logs were found there on the right of way, if that was their practice, and that was their practice at the time the license was granted, and they continued along depositing logs there, and the children continued along playing there, then if the child was injured by playing on one of those logs there would be no liability, because you see in that case the railway company gave them permission to play on the logs—to play on the ground and play on the logs—and, if they got hurt there, there would be no liability.

"But if the railway company had not been accustomed to deposit logs on the roadbed at that place, and had granted a license for the children to play there, and, after having granted the license, deposited

logs there, that would be a change in the condition of the place to which the license attached. They would have a right to change the condition of that place; but they would not have a right to so change it so as to put it in a condition dangerous to these children whom they had permitted and consented might play there.

"Now, I have already said to you, quite fully I think, that it means this: That they would have a right to change the conditions in any manner they saw fit, unless the change was of a nature which would advise an ordinarily prudent person that an accident such as this was likely to follow from it."

The jury had been instructed:

"It is not claimed in this case that any officer, or agent, or employee of the Soo railway company ever told these children that they might play there. There is no claim in the case that the defendant railway company expressly, by word of mouth, consented that these children might play at that place, or upon any part of the tract of land. From the absence of that testimony to that effect it does not follow that the jury may not find the defendant consented to their playing there. The consent of the defendant railway company to the use of the ground by the children as a playground may be inferred, provided you are able to say from the testimony in the case that the children used this part of the ground where the logs were—remember, I am always referring to that particular place—provided you are able to say from the testimony in the case that the children used that part of the ground so openly, and for such a long time, and so continuously as a playground that it is reasonable to suppose that the defendant company knew they were using it, and that it is reasonable to suppose that the defendant company consented thereto. The use, however, of the ground by the children, if it was used by them, is to be considered by you in connection with all the other evidence in the case, and you are then to say whether or not you find that the defendant railway company consented to the use of that ground by the children.

"Now, gentlemen, bear in mind this distinction, which the court is seeking to make here: The mere use of the ground by the children as a playground, the fact

that they went there and played, would not be enough to charge the railway company with responsibility. You must go further than that, and you must be able to say from the testimony that the use which the children made of the place was of that character, and was for such length of time, that it is reasonable to suppose the defendant company consented to it. In other words, you must find by inference, as I said, from the testimony in the case, that the defendant company did actually consent that these children might occupy that particular place as a playground."

At the close of the proofs, defendant, assigning reasons, moved for a directed verdict in its favor. The court reserved the determination of legal questions, took the verdict of the jury, and later overruled the motion and entered judgment on the verdict. A separate opinion, which was filed, recited that at the close of the proofs defendant moved for a directed verdict in its favor, on the ground that there was no evidence in the case which would support a verdict in favor of the plaintiff, and that the question presented was reserved for decision. The judgment entry confirms this.

Error is assigned upon the ruling. Plaintiff says the assignment is too general, and upon authority of *Gold* v. *Railway,* 169 Mich. 178 (134 N. W. 1118), cannot be considered, and declined to discuss it. Defendant argues two principal propositions, which are: *First,* that it violated no duty which it owed to plaintiff's decedent; *second,* that the court erred in submitting to the jury the question whether defendant had knowledge, actual or constructive, that children were in the habit of playing upon the logs stored upon its premises.

OSTRANDER, J. (*after stating the facts*). The ruling in *Gold* v. *Railway, supra,* is based upon *Jackson Bridge & Iron Co.* v. *Insurance Co.,* 122 Mich. 433 (81

N. W. 265) ; *Wolfe* v. *Stack,* 153 Mich. 445 (116 N. W. 1010), and *Canerdy* v. *Railway Co.,* 156 Mich. 211 (120 N. W. 582). See, also, *Nelson* v. *Extract Co.,* 184 Mich. 111 (150 N. W. 317). The point that the assignment of error here is too general—not specific— is decided against appellee by the record. Clearly, it is specific.

It is admitted by plaintiff that his decedent was not invited upon the defendant's premises. He disclaims any aid from the doctrine of the *Turntable Cases,* so called. Those cases, recognizing the rule that one whose entry is simply not opposed and prevented is not invited upon premises, found an invitation to children to enter premises in the attractive thing erected or maintained thereon. Plaintiff's contention rests upon three assumed facts: (1) That plaintiff's decedent was a licensee; (2) a change made by the owner in premises which plaintiff's decedent was licensed or permitted to use, creating a peril; (3) an injury growing out of the customary use of the premises by the licensee and the peril actively created by the owner —a wilful act of injury.

I find no testimony tending to prove that children habitually played on the logs, or on the ground where they were deposited. There is testimony tending to prove that, two days before the occurrence here in question, some children were playing on the logs; but there is no testimony tending to prove that any officer or agent of defendant knew about it. This answers precisely a question which the court submitted to the jury, namely, whether the defendant "did actually consent that these children might occupy that particular place as a playground"—a question which the court made a vital one and should have answered favorably to defendant. There is no need, perhaps, to here comment upon the use by the court, in the part of the charge referred to, of the expressions "consented

thereto" and "consented to the use of that ground," expressions which seem to be confusing. The testimony supports no idea, or theory, of *consent* by the defendant to any use by the public of its premises. At the most, defendant did not exclude the public, and, while its knowledge that the public was customarily making a certain use of a part of its premises might raise a duty not by its acts to make such customary use perilous, such an idea of its duty depends not at all upon any idea of its consent to such use.

As, at the best, acquiescence in a use of the premises —license to use them—must depend upon some known customary use, if we assume that plaintiff's decedent was a licensee, no testimony tends to prove a license to use the roadbed of defendant's tracks for any purpose. There is no testimony tending to prove that the depositing of logs along the track was a new use of the property, and none tending to prove that the depositing of the logs created a peril affecting any customary use of any part of the premises by any of the public.

It follows that the court, upon the evidence, ought to have determined the case favorably to defendant, and that the judgment must be reversed, with costs to appellant.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.