THONE v NICHOLSON

Docket No. 77-3102. Submitted May 2, 1978, at Grand Rapids.—Decided July 6, 1978. Leave to appeal applied for.

Complaint by Roger Thone against Elmer J. Nicholson, Sima A. Nicholson, and Chicago and North Western Transportation Company for damages for injuries sustained in a motorcycle accident on land owned by the Nicholsons and formerly owned by the transportation company. The Delta Circuit Court, Clair J. Hoehn, J., granted summary judgment for the defendants for a failure to state a claim upon which relief could be granted. Plaintiff appeals. *Held:*

A cause of action does not arise against the owner, tenant, or lessee of land used for recreational purposes for injuries to any person on the land for such purposes who did not pay a valuable consideration to use such property where the injury was not caused by gross negligence or wilful and wanton misconduct by the owner, tenant, or lessee. Summary judgment for the transportation company was proper since it was not alleged that it had retained control and possession of the property. Liability for injuries due to defective premises rests, at common law, upon the person who has control and possession of the premises. Summary judgment for the Nicholsons was also proper since there was no showing of gross negligence or wilful and wanton misconduct.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 4 Am Jur 2d, Appeal and Error § 104.

5 Am Jur 2d, Negligence §§ 45, 46, 99–107.

Receivability of order denying motion for summary judgment. 15 ALR3d 899.

[2–6, 8] 57 Am Jur 2d, Negligence §§ 45, 46, 99–107.

62 Am Jur 2d, Premise Liability §§ 37–50, 90, 100.

"Economic benefit" or "public invitation" as test of licensee-invitee status. 95 ALR2d 992.

[3] 57 Am Jur 2d, Negligence § 249 *et seq.*

[3–6] 62 Am Jur 2d, Premise Liability § 12 *et seq.*

[7] 57 Am Jur 2d, Negligence §§ 99–107.

62 Am Jur 2d, Premise Liability §§ 90, 100.

1. APPEAL AND ERROR—JUDGMENT—SUMMARY JUDGMENT—FACTUAL ALLEGATIONS—CONCLUSIONS—FACTUAL DEVELOPMENT.

   All factual allegations by the plaintiff, as well as any conclusions which can reasonably be drawn therefrom, are accepted as true when a summary judgment for the defendant is appealed; the Court of Appeals will, however, disregard mere conclusional statements of liability, since their task is to determine whether the plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery.

2. ACTION—REAL PROPERTY—LIABILITY—RECREATIONAL USERS OF LAND—INJURIES—CONSIDERATION—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT—STATUTES.

   The statute regarding the liability of property owners or occupants to recreational users of their land provides that a cause of action does not arise against the owner, tenant, or lessee of land used for recreational purposes for injuries to any person who is on the land for outdoor recreational purposes where the injured person did not pay a valuable consideration for the use of such property and where the injury was not caused by gross negligence or wilful and wanton misconduct by such owner, tenant or lessee (MCL 300.201; MSA 13.1485).

3. ACTION—REAL PROPERTY—FORMER OWNERS—LIABILITY—RECREATIONAL USERS—INJURIES—EVIDENCE—CONTROL—POSSESSION—STATUTES.

   The statute regarding the liability of property owners or occupants to recreational users of their land is inapplicable to a determination of the liability of the former owner of real property for injuries received by a recreational user of the land where there is no evidence that the former owner retained control or possession of the property and where such former owner is not alleged to be an owner, tenant, or lessee of the property; therefore, summary judgment in favor of a former owner of the land upon which a recreational user was injured was proper, in an action for damages for such injuries, where it was not alleged that such former owner has retained control and possession of the property (MCL 300.201; MSA 13.1485).

4. NEGLIGENCE—REAL PROPERTY—LIABILITY—CONTROL—POSSESSION—VENDOR AND PURCHASER.

   Liability for an injury due to defective premises rests, at common law, upon the person who has control and possession of the premises; for that reason the vendor of real property is generally permitted to step out of the liability picture and shift

responsibility for the condition of the property to the purchaser.

5. NEGLIGENCE—LIABILITY—REAL PROPERTY—OWNERS—RECREATIONAL
   USERS—CONSIDERATION—GROSS NEGLIGENCE—WILFUL AND
   WANTON MISCONDUCT—SUMMARY JUDGMENT—APPEAL AND ER-
   ROR—STATUTES.

   The owners of real property are not liable for injuries to recreational users of their land who do not pay a valuable consideration for such use unless such injuries are caused through the owner's gross negligence or wilful and wanton misconduct; therefore, summary judgment in favor of such land owners was proper, in an action for damages for injuries sustained by a gratuitous recreational user of their land, where there was no gross negligence or wilful and wanton misconduct (MCL 300.201; MSA 13.1485).

6. NEGLIGENCE—COMMON LAW—LANDOWNERS—COMMON-LAW DUTY—
   LICENSEES—IMPLIED PERMISSION.

   The common-law duty of a landowner to one who comes upon his land turns upon the status of the visitor; a licensee is a person who enters on or uses another's premises with the express or implied permission of the owner or person in control thereof; such permission may be implied where the owner acquiesces in the known, customary use of property by the public.

7. NEGLIGENCE—GROSS NEGLIGENCE—WILFUL AND WANTON MISCON-
   DUCT—COMMON LAW.

   Gross negligence and wilful and wanton misconduct are distinct concepts at common law, although the terms have often been misused as synonyms.

8. NEGLIGENCE—DEFINITION—GROSS NEGLIGENCE—WILFUL AND WAN-
   TON MISCONDUCT—GUEST PASSENGERS—COMMON LAW—PREM-
   ISES LIABILITY—STATUTES.

   The definition of gross negligence and wilful and wanton misconduct under the guest passenger statute overlaps the definition of wilful and wanton misconduct at common law, however, guest passenger cases are not controlling as to the correct definition of wilful and wanton misconduct at common law; common-law premises liability is substantially broader than liability for wilful and wanton misconduct under either the guest passenger statute or common law (MCL 257.401; MSA 9.2101).

*Green, Renner, Weisse, Rettig, Rademacher & Clark,* for plaintiff.

*Mikkola & Hiltunen,* for defendants Elmer and Sima Nicholson.

*Clancey, Hansen, Davidson, Chilman & Graybill,* for defendant Chicago and North Western Transportation Company.

Before: V. J. BRENNAN, P. J., and R. B. BURNS and M. J. KELLY, JJ.

R. B. BURNS, J. Plaintiff had summary judgment entered against him for failure to state a claim upon which relief could be granted, GCR 1963, 117.2(1), and appeals. We affirm.

On review of plaintiff's amended complaint under GCR 1963, 117.2(1), we accept as true all of plaintiff's factual allegations as well as any conclusions which can reasonably be drawn therefrom, *Van Liere v State Highway Dept,* 59 Mich App 133, 137; 229 NW2d 369, 371 (1975), but disregard mere conclusional statements of liability, *Binder v Consumers Power Co,* 77 Mich App 343, 346–347; 258 NW2d 221, 224 (1977). Our task is to determine whether plaintiff's claim "is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery". *Crowther v Ross Chemical and Manufacturing Co,* 42 Mich App 426, 431; 202 NW2d 577, 580 (1972).

Plaintiff's amended complaint alleged that he was injured when the motorcycle he was riding along an abandoned railroad right-of-way struck the bank of a creek which intersected the right-of-way. Defendants Nicholson, owners of the property, allegedly knew the property was used by the general public for recreational purposes, including

motorcycling, and were aware that the intersection of the right-of-way with the creek constituted an inherently hazardous condition dangerous to the users of the property, but despite that knowledge failed to erect a bridge over the creek or erect signals, signs or warnings. Defendant Chicago and North Western Transportation Company, a predecessor in title to the property, allegedly created the hazardous condition by removing barricades at the creek when it sold the property.

The trial court granted defendants' motions for summary judgment because it concluded none of the defendants had a duty to erect a bridge or post warnings for plaintiff's convenience, and because plaintiff had not alleged facts indicating wilful and wanton misconduct by any of the defendants. MCL 300.201; MSA 13.1485.

The statute upon which the trial court relied provides:

"No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee." MCL 300.201; MSA 13.1485.

Since defendant Chicago and North Western Transportation Company is not alleged to be an owner, tenant, or lessee of the property, the statute is inapplicable to a determination of its liability. At common law, as a general rule liability for an injury due to defective premises rests upon the person who has control and possession of the

premises. *Nezworski v Mazanec,* 301 Mich 43, 56; 2 NW2d 912, 917 (1942), *Dombrowski v Gorecki,* 291 Mich 678, 681; 289 NW 293, 294 (1939), *Paisley v United Parcel Service, Inc,* 17 Mich App 672; 170 NW2d 283 (1969). For that reason the vendor of real property is generally permitted to step out of the liability picture and shift responsibility for the condition of the property to the purchaser. Prosser, Torts (4th ed), § 64, p 412. Since there is no allegation that defendant Chicago and North Western Transportation Company retained control and possession of the property, it was entitled to summary judgment.

Because defendants Nicholson are alleged to be the owners of the property, their liability is governed by the statute. There is no allegation that plaintiff paid a valuable consideration for the purpose of motorcycling on the property, so that defendants Nicholson are not liable unless they caused plaintiff's injuries through gross negligence or wilful and wanton misconduct.

Several cases have defined and applied the terms gross negligence and wilful and wanton misconduct, as used in the instant statute. *Thomas v Consumers Power Co,* 58 Mich App 486; 228 NW2d 786 (1975), *aff'd in part, rev'd in part* 394 Mich 459; 231 NW2d 653 (1975), *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972), *Magerowski v Standard Oil Co,* 274 F Supp 246 (WD Mich, 1967). In *Thomas* this Court said the purpose of the statute was to open up and make available for public recreational use vast areas of vacant but private lands. We asserted that the method by which the goal was to be achieved was to codify the common-law liability of landowners to those who come gratuitously upon the land, and that the statute neither expanded nor restricted the com-

mon-law duty of landowners owed to licensees. 58 Mich App at 491–496; 228 NW2d at 789–791. In reliance upon *Thomas* we have looked to the common law for guidance as to the duty of a landowner to warn of hazardous conditions of the land. Our review indicates that *Thomas, Taylor* and *Magerowski* did not adequately distinguish the concepts of common-law premises liability, negligence, gross negligence, and wilful and wanton misconduct.

The common-law duty of a landowner to one who comes upon his land turns upon the status of the visitor.

"A licensee has been defined as a 'person who enters on or uses another's premises with the express or implied permission of the owner or person in control thereof * * * '." *Cox v Hayes,* 34 Mich App 527, 532; 192 NW2d 68, 70–71 (1971).

Permission may be implied where the owner acquiesces in the known, customary use of property by the public. *Polston v S S Kresge Co,* 324 Mich 575, 578; 37 NW2d 638, 640 (1949), *Sandstrom v Minneapolis, S P & S S M R Co,* 198 Mich 99, 107; 164 NW 472, 474 (1917). Since plaintiff has alleged that defendants knew their property was used by the general public for recreational purposes, we infer that plaintiff was a licensee.

Early Michigan cases indicated that a landowner owed no duty to licensees to refrain from negligent acts generally, but instead would be liable only for reckless and wilful infliction of injury, *Habina v Twin City General Electric Co,* 150 Mich 41, 48; 113 NW 586, 588 (1907), or, inconsistently, for injuries inflicted through active, but not passive, negligence, see, *e.g., Polston v S S Kresge Co, supra,* at 580–581; 37 NW2d at 641, *Schmidt v*

*Michigan Coal & Mining Co,* 159 Mich 308, 311–312; 123 NW 1122, 1123 (1909), *Hargreaves v Deacon,* 25 Mich 1, 4 (1872).

Subsequent cases, however, require that landowners refrain from negligent acts generally:

"[D]efendants' duty to plaintiff required they exercise reasonable care to disclose to her dangerous defects which were known to them and were likely to be undiscovered by plaintiff. 2 Restatement of Torts, § 342." *Miller v Miller,* 373 Mich 519, 524–525; 129 NW2d 885, 887 (1964).

" 'A possessor of land is subject to liability for bodily harm caused by a natural or artificial condition thereon to others who are privileged to enter the land for a public or private purpose, irrespective of his consent, if he

" '(a) knows that they are upon the land or are likely to enter it in the exercise of their privilege, and

" '(b) knows of the condition and realizes that it involves an unreasonable risk to them and has no reason to believe that they will discover the condition and realize the risk, and

" '(c) fails to exercise reasonable care

" '(i) to make the condition reasonably safe or

" '(ii) to warn them of the condition and the risk involved therein.' " *Carlisi v Marysville,* 373 Mich 198, 208–209; 128 NW2d 477, 483 (1964), quoting Restatement Torts, § 345.

Distinguish this negligence standard of conduct from the following definitions of gross negligence and wilful and wanton misconduct.

There are two primary sources of definition for the terms gross negligence and wilful and wanton misconduct: common law, and cases interpreting the now defunct guest passenger statute, MCL 257.401; MSA 9.2101, see *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975).

This Court has summarized the meaning of the terms under the guest passenger statute thusly:

"Although the statute posits these terms in the disjunctive, the Supreme Court has held them to be synonymous. *Thayer v Thayer,* 286 Mich 273; 282 NW 145 (1938), *Pawlicki v Faulkerson,* 285 Mich 141; 280 NW 141 (1938). Liability is imposed when the driver's conduct 'manifests a high degree of danger, a manifest probability that harm will result therefrom, and an utter disregard of the probable consequences'. *Stevens v Stevens,* 355 Mich 363, 371; 94 NW2d 858, 863 (1959). A plaintiff must additionally show that the driver, through his conduct, exhibited 'an affirmatively reckless state of mind with intent to depart from careful driving'. *Brooks v Haack,* 374 Mich 261, 265; 132 NW2d 13, 15 (1965), *Hendershott v Rhein,* 61 Mich App 83; 232 NW2d 312 (1975)." *Hoag v Paul C Chapman & Sons, Inc,* 62 Mich App 290, 296–297; 233 NW2d 530, 533 (1975).

At common law, gross negligence and wilful and wanton misconduct are distinct concepts, although the terms have often been misused as synonyms. *LaCroix v Grand Trunk W R Co,* 379 Mich 417, 421–422; 152 NW2d 656, 657 (1967), *Gibbard v Cursan,* 225 Mich 311, 318–324; 196 NW 398, 400–402 (1923). *Papajesk v Chesapeake & O R Co,* 14 Mich App 550, 555; 166 NW2d 46, 48 (1968).

Gross negligence refers to the last clear chance doctrine, as set forth in *Zeni v Anderson,* 397 Mich 117, 146–156; 243 NW2d 270, 284–289 (1976).

The leading case on wilful and wanton misconduct, *Gibbard v Cursan, supra,* distinguished the concept from negligence in this manner:

"If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness,

rather than by inadvertence, it transcends negligence—is different in kind. * * *

" 'Although what is really reckless and wanton misconduct is sometimes spoken of as gross negligence, the expression is everywhere recognized as inaccurate and unfortunate, because it seems to imply a difference only of degree, whereas the whole doctrine that contributory negligence is no defense where the injury is the result of recklessness and wantonness is based upon the theory of a difference in kind. For the same reason, the phrase "reckless and wanton negligence" has a misleading tendency. One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.' " 225 Mich at 320–321; 196 NW at 401.

*LaCroix v Grand Trunk W R Co, supra,* at 425–426; 152 NW2d at 659, adds this explanation of the concept:

" 'Wanton misconduct is a different kind of offense than ordinary negligence, even though it be gross. Fault is involved in both, but in the one the fault of the callous, the brutish, the quasi-criminal, in the other the human frailty of lack of care, of inattention, of diversion. These are faults of different hues in the spectrum of human conduct and so the courts have treated them. Our Court should do likewise.' "

Wanton and wilful misconduct is "either * * * an intentional wrong or a reckless and heedless disregard to another's safety". "[W]ilful negligence

is quasi-criminal and manifests an intentional disregard to another's safety". *Papajesk v Chesapeake & O R Co, supra,* at 555, 556; 166 NW2d at 48, 49.

It is apparent that the definition of gross negligence and wilful and wanton misconduct under the guest passenger statute overlaps the definition of wilful and wanton misconduct at common law. Both types of cases quote this three-part test as the applicable law:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) The omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' " See, *e.g., Kieft v Barr,* 391 Mich 77, 80; 214 NW2d 838, 839 (1974), *Tien v Barkel,* 351 Mich 276, 281–282; 88 NW2d 552, 555 (1958), *Gibbard v Cursan, supra,* at 322; 196 NW at 402.

Thus, this Court has said that common-law wilful and wanton misconduct is equivalent to guest passenger gross negligence and wilful and wanton misconduct. *Hoag v Paul C Chapman & Sons, Inc, supra,* at 299; 233 NW2d at 535. This equation is unfortunate. The Supreme Court has admonished that guest passenger cases are not controlling as to the correct definition of wilful and wanton misconduct at common law. *LaCroix v Grand Trunk W R Co, supra,* at 426; 152 NW2d at 660. Failure to maintain the distinction will blur the concepts and contribute to confusion over the various meanings of gross negligence and wilful and wanton misconduct.

The Supreme Court has criticized the above three-part test as failing to adequately distinguish

negligence from wilful and wanton misconduct. *Zeni v Anderson, supra,* reviewed the common-law gross negligence doctrine in Michigan, and found the cases confusing. The Court aptly observed that the above three-part test is misleading:

"While *Gibbard* said it distinguished 'wilful, wanton or reckless misconduct' from negligence, it accepted a definition of 'wilful' couched in terms of ordinary negligence, except for the recognition that failure to exercise ordinary care would have dire consequences." *Zeni v Anderson, supra,* at 150; 243 NW2d at 286.

We have seen that common-law premises liability is substantially broader than liability for wilful and wanton misconduct under either the guest passenger statute or common law, and that the above three-part test is misleadingly suggestive of a negligence standard rather than wilful and wanton misconduct. Cases interpreting MCL 300.201; MSA 13.1485 have failed to recognize this.

In *Magerowski v Standard Oil Co, supra,* the defendant argued that it was not grossly negligent in allowing a child to fall off its dock and drown. The Federal district court relied upon premises liability law, the attractive nuisance doctrine, to find a duty on the part of the defendant, and quoted as the definition of "gross negligence" the three-part test. It is apparent that it applied a negligence, not a wilful and wanton misconduct or last clear chance doctrine, standard:

"There is sufficient evidence in the record to establish defendant knew children used its premises and in the exercise of ordinary care could have prevented them from using its facilities." 274 F Supp at 248.

In *Taylor v Mathews, supra,* another child

drowning case, this Court found a fact question as to "gross negligence or wilful and wanton misconduct" where gravel pit owners did not complain to the sheriff about swimmers, did not remove a diving board and take steps to prevent its replacement, did not fence the area and did not instruct their watchman to deny children access to the gravel pit. In doing so this Court followed the lead of *Magerowski,* relying upon attractive nuisance law and the misleading three-part test, without distinguishing premises liability cases from wilful and wanton misconduct or gross negligence at either common law or under the guest passenger statute.

In *Thomas v Consumers Power Co, supra,* adults were killed when they drove a snowmobile under utility pole "guy wires" at night. This Court did distinguish gross negligence from wilful and wanton misconduct under common law, but equated common-law premises liability with wilful and wanton misconduct, failing to recognize that later premises liability cases expanded liability, and assumed that "active negligence" is the same as wilful and wanton misconduct. "Active negligence" is, however, still negligence, and different in kind from wilful and wanton misconduct. See *LaCroix v Grand Trunk W R Co, supra,* at 425; 152 NW2d at 659, *Gibbard v Cursan, supra,* at 320–321; 196 NW at 401. This Court distinguished *Taylor* on the erroneous basis that the passive negligence in that case was "active negligence", and held that there was no "active negligence" on the part of Consumers Power Company. There was also no gross negligence, as Consumers Power Company's negligence was not subsequent to plaintiffs' negligence.

On appeal, the Supreme Court, in a memorandum opinion, reversed this Court's application of the statute to the facts.

"Count II was based on gross negligence. We find that the allegations of the complaints sufficiently state facts giving rise to a cause of action based on gross negligence so as to withstand summary judgment. Plaintiffs clearly alleged that the defendants knew of Consumer Power's unmarked guy wires and the threat therefrom to snowmobilers permissively using the Saginaw County Agricultural Society's land, that unmarked guy wires in areas 'exposed to traffic' were a violation of an industry safety code, that defendants could have avoided the resulting harm in several ways, and that they failed to do so. See, e.g., *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972); 2 Restatement of Torts 2d, § 500." *Thomas v Consumers Power Co,* 394 Mich 459, 460–461; 231 NW2d 653, 654 (1975).

This opinion is an enigma. Clearly on the facts recited the last clear chance doctrine was inapplicable, and there was no gross negligence. See. *Zeni v Anderson, supra.* The Court's citation of *Taylor v Mathews, supra,* and the Restatement appears to indicate that it meant that it found wilful and wanton misconduct. However, to this Court, there were no facts alleged in *Thomas* indicating wilful and wanton misconduct, as those terms were used under the guest passenger statute or are used at common law.

As we read *Thomas, Taylor,* and *Magerowski,* all of these cases applied a negligence standard analogous to that in *Miller v Miller, supra,* and *Carlisi v Marysville, supra.* Must we then read the Supreme Court opinion in *Thomas* as modifying the definition of wilful and wanton misconduct so as to make it equivalent to premises liability negligence? We think not. It is well-recognized that many cases have misused and misapplied the terms gross negligence and wilful and wanton misconduct, and that this area of the law is fraught with confusion and wrong statements of the law. See, e.g., *Zeni v Anderson, supra,* at 146–

151; 243 NW2d at 284–286, *LaCroix v Grand Trunk W R Co, supra,* at 422–428; 152 NW2d at 657–660, *Gibbard v Cursan, supra,* at 318–322; 196 NW at 400–402, *Papajesk v Chesapeake & O R Co, supra,* at 554–556; 166 NW2d at 48. The Supreme Court's use of the term "gross negligence" in *Thomas* indicates it did not have a firm grasp upon the distinction between gross negligence and wilful and wanton misconduct. This inference is supported by its reliance upon *Taylor,* which in turn relied upon the three-part test of wilful and wanton misconduct which the Supreme Court, subsequent to *Thomas,* found misleading. *Zeni v Anderson, supra.* We doubt that the Supreme Court would elect as the vehicle of a revision of the confusing law of wilful and wanton misconduct an obscure memorandum opinion. We therefore discount the Supreme Court's opinion in *Thomas* as a definition of wilful and wanton misconduct, and look instead to common-law and guest passenger cases for guidance as to the meaning of the term.

It is clear that no gross negligence is involved in this case. *Zeni v Anderson, supra.*

Plaintiff asserts that he has alleged facts which come within the three-part test of wilful and wanton misconduct. We doubt that plaintiff is seriously alleging that defendants had, as means at hand to avoid injuring him, a bridge, signals, signs or warnings. Even assuming plaintiff is serious in that allegation, he has been misled by the test into believing his allegations of negligence constitute allegations of wilful and wanton misconduct. Plaintiff's allegation that defendants failed to construct a bridge or post warnings of a known hazardous, natural condition of the land would state a cause of action for negligence under premises lia-

bility law, *Miller v Miller, supra, Carlisi v City of Marysville, supra,* but plaintiff has alleged no affirmatively reckless act which states a cause of action for wilful and wanton misconduct. By enacting MCL 300.201; MSA 13.1485, the Legislature has turned back the clock in premises liability law as to recreational lands to the time when licensees took the land as they found it. See *Habina v Twin City General Electric Co, supra, Hargreaves v Deacon, supra.* In our opinion failure to post a warning of a stream which crosses an abandoned railroad right-of-way cannot amount to wilful and wanton misconduct.

Michigan's vast private recreational lands are filled with natural hazards upon which users of that land are inevitably going to be injured. Indeed, many recreational users, including many off-road motorcyclists, seek out hazardous conditions, viewing them as challenges. If landowners could be held liable for failing to remove hazards or to warn of them, the purpose of MCL 300.201; MSA 13.1485 would be defeated. Rather than despoiling the natural quality of the land with signs pointing to various hazardous conditions for the benefit of a public which many landowners merely tolerate, landowners would find it would make much more sense to post the land "no trespassing".

Affirmed. Costs to defendants.