## MATTHEWS v CITY OF DETROIT

Docket No. 77738. Submitted January 18, 1985, at Detroit.—Decided
   April 2, 1985. Leave to appeal applied for.

   Malik Matthews, age 6, drowned in the water surrounding the
   Scott Fountain on the island of Belle Isle. Sandra Matthews,
   personal representative of the estate of Malik Matthews, de-
   ceased, filed a wrongful death suit against the City of Detroit in
   Wayne Circuit Court alleging negligence, intentional nuisance,
   gross negligence, wilful and wanton misconduct, and attractive
   nuisance. The court, John M. Wise, J., granted summary judg-
   ment in favor of defendant on all counts. Plaintiff appealed.
   *Held:*

   1. The recreational use act applies to a public invitee who
   uses a public recreation area without paying a valuable consid-
   eration for such use. That act precludes liability of defendant
   in this case unless the decedent's injuries were caused by gross
   negligence or wilful and wanton misconduct on the part of
   defendant.

   2. The trial court properly dismissed plaintiff's claim alleging
   gross negligence, and plaintiff has not appealed from that
   decision.

   3. The trial court also correctly dismissed plaintiff's claim of
   wilful and wanton misconduct. Plaintiff failed to allege facts
   sufficient to support a claim of wilful and wanton misconduct.

   4. The trial court properly dismissed plaintiff's intentional
   nuisance claim.

   Affirmed.

1. NEGLIGENCE — PUBLICLY OWNED LANDS — RECREATIONAL USE.

   The recreational use act applies to a public invitee who uses a
   public recreation area without paying a valuable consideration
   for such use (MCL 300.201; MSA 13.1485).

2. NEGLIGENCE — RECREATIONAL USE — WILFUL AND WANTON MIS-
      CONDUCT.

   Wilful and wanton misconduct, under the statute which limits

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 62 Am Jur 2d, Premises Liability § 37 *et seq.*
[2] 57 Am Jur 2d, Negligence §§ 101-107.
[3, 4] 58 Am Jur 2d, Nuisances §§ 20-23.

the liability of a landowner for injuries to a person using the defendant's land for recreational purposes, is made out only if the conduct alleged shows an intent to harm or such indifference to whether harm will result as to be the equivalent of a willingness that it does (MCL 300.201; MSA 13.1485).

3. NUISANCE — INTENTIONAL NUISANCE.

An intentional nuisance is one created by conduct intended to bring about conditions which in fact constitute a nuisance.

4. NUISANCE — INTENTIONAL NUISANCE.

A plaintiff, in order to prove an intentional nuisance, must show that the defendant who created or continued the nuisance knew or must have known that harm to the plaintiff was substantially certain to follow as a result of the defendant's actions.

*Rader, Eisenberg & Feldman, P.C.* (by *Jeffrey H. Feldman*), and *Gromek, Bendure & Thomas* (by *Daniel J. Wright*), of counsel, for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Lamont E. Buffington* and *Rosalind H. Rochkind*), for defendant.

Before: CYNAR, P.J., and BEASLEY and R. E. ROBINSON,* JJ.

PER CURIAM. On July 2, 1981, Malik Matthews, age 6, drowned in the water surrounding the Scott Fountain on the island of Belle Isle. His estate sued the City of Detroit for his wrongful death, alleging negligence, intentional nuisance, gross negligence, wilful and wanton misconduct, and attractive nuisance.

This appeal brings into question the propriety of the trial court's entry, pursuant to GCR 117.2(1), of a summary judgment as to all counts.

The negligence count was attacked by defendant under the recreational use act:

* Former circuit judge, sitting on the Court of Appeals by assignment.

"No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee." MCL 300.201; MSA 13.1485.

Plaintiff first seeks to avoid the restrictions of the statute by portraying decedent as an invitee, as contrasted to a licensee or trespasser.

So far as we can determine, none of the Michigan appellate cases decided under the recreational use act have been confronted with this approach, nor have any of them, in specific terms, found an invitee among the plaintiffs therein. This is not to say, however, that these decisions have ignored the possible status of a plaintiff as an invitee.

The Restatement of The Law defines a licensee as follows:

"§ 330. Licensee Defined
"A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." 2 Restatement Torts, 2d, § 330, p 172.

It also defines an invitee as follows:

"§ 332. Invitee Defined
"(1) An invitee is either a public invitee or a business visitor.
"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." 2 Restatement Torts, 2d, § 332, p 176.

The Comments to § 332 further clarify the difference between the two classes:

"Comment:

"*a. Invitee.* 'Invitee' is a word of art, with a special meaning in the law. This meaning is more limited than that of 'invitation' in the popular sense, and not all of those who are invited to enter upon land are invitees. A social guest may be cordially invited, and strongly urged to come, but he is not an invitee. * * * Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception. Such persons fall generally into two classes: (1) those who enter as members of the public for a purpose for which the land is held open to the public; and (2) those who enter for a purpose connected with the business of the possessor. The second class are sometimes called business visitors; and a business visitor is merely one kind of invitee. There are many visitors, such as customers in shops, who may be placed in either class.

"*b. Invitation and permission.* Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so." Restatement, *supra.*

Our research has failed to disclose a Michigan case adopting the notion of a public invitee.

The recreational use act has been held to be applicable to publicly owned lands. *Burnett v City of Adrian,* 414 Mich 448; 326 NW2d 810 (1982); *Graham v Gratiot County,* 126 Mich App 385; 337 NW2d 73 (1983); *Lucchesi v Kent County Road Comm,* 109 Mich App 254; 312 NW2d 86 (1981); *Syrowik v Detroit,* 119 Mich App 343; 326 NW2d 507 (1982); *McNeal v DNR,* 140 Mich App 625; 364 NW2d 768 (1985).

Our Courts have held that the recreational use

act barred claims based on negligence in the following cases which involved either trespassers or licensees: *Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965); *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972); *Thomas v Consumers Power Co,* 58 Mich App 486; 228 NW2d 786 (1975); *affirmed on negligence count* 394 Mich 459; 231 NW2d 653 (1975); *Anderson v Brown Bros, Inc,* 65 Mich App 409; 237 NW2d 528 (1975); *Thone v Nicholson,* 84 Mich App 538; 269 NW2d 665 (1978); *Randall v Harrold,* 121 Mich App 212; 328 NW2d 622 (1982); *Burnett v City of Adrian,* unpublished per curiam opinion, docket no. 78-1692, *affirmed* on negligence count in *Burnett v City of Adrian,* 414 Mich 448; 326 NW2d 810 (1982). In some of the cases, the courts have not defined the status of the user of the lands, and in others, where the courts have found the user to be a licensee, there has been general agreement that the act merely codifies the common law as to licensees.

However, a more common thread running throughout the decisions is the gratuitous nature of the use, the courts constantly reiterating, often without regard to the status of the user, that where there is no valuable consideration for the use there is no liability. This view is affirmed in the statute itself which makes no attempt to distinguish between licensees and invitees as such.

This Court, in *Danaher v Partridge Creek Country Club,* 116 Mich App 305; 323 NW2d 376 (1982), found the act not applicable to recreational land where the public was invited for a fee to use the premises. Again the Court emphasized the valuable consideration aspect of the act.

In like vein, this Court held in *Syrowik v Detroit, supra,* that the act applied to the plaintiff therein, who would fit the Restatement Torts, 2d,

§ 322(2), *supra,* definition of a public invitee. The Court, without attempting to define the status of the user, based its decision on the gratuitous nature of the use.

There is thus an indication that our courts have been willing to go beyond their implied thought that the act applies to licensees. That they are correct in doing so is affirmed by the late Justice MOODY writing in *Burnett v City of Adrian, supra,* p 481:

"The specific and unmistakable statutory language overrides the courts' broad statements regarding the effect of the act upon the common law. Further, when the Legislature states '[n]o cause of action * * * unless', a court cannot engraft onto the proviso a cause of action not specified therein."

We hold that the recreational use act applies to a public invitee who uses a public recreation area without paying a valuable consideration for such use.

Turning to the other issues raised by plaintiff on appeal, by its express language, the recreational use statute does not protect landowners from liability for gross negligence, or for wilful and wanton misconduct. Plaintiff pled both. The trial court properly dismissed the claim alleging gross negligence, and plaintiff is not appealing from that decision.

The trial court also dismissed the claim of wilful and wanton misconduct, finding that plaintiff's complaint failed to allege facts sufficient to meet the test set forth in *Gibbard v Cursan,* 225 Mich 311, 322; 196 NW 398 (1923):

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordi-

nary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another."

While the Supreme Court in *Burnett v City of Adrian, supra,* showed some dissatisfaction with this definition, it chose not to overrule it, but clarified the test, explaining that wilful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or such indifference to whether harm will result as to be the equivalent of a willingness that it does. *Burnett, supra,* p 456; *McNeal v DNR, supra.*

Plaintiff alleged that the city knew or had reason to know of the potential harm created by the lagoon, especially to children, knew that persons had slipped or fallen into the lagoon prior to July 2, 1981, and knew that it was likely that others would slip or fall into the lagoon in the future; that the city knew or had reason to know that children played on or near the fountain and lagoon, and that, because of the construction, design, and location of the fountain and lagoon, children playing there were likely to fall into the lagoon and drown; and that the city failed or refused to avert the danger by fencing or otherwise placing barriers around the lagoon or fountain, draining the lagoon, posting warnings, or taking other appropriate precautions.

We find nothing in those allegations suggesting an intent to harm, and plaintiff has not alleged facts suggesting that injury is so probable, expected or likely that the indifference to harm is tantamount to a willingness that it occur, so as to meet the *Burnett* test of wilful and wanton misconduct.

The *Burnett* Court found allegations barely sufficient to comprise wilful and wanton misconduct where the plaintiff alleged that the defendant knew that the submerged structure in the lake was creating an unnatural undertow dangerous to swimmers but did nothing to remove it. A structure creating an undertow, like exposed guy wires *(Thomas v Consumers Power Co,* 394 Mich 459; 231 NW2d 653 [1975]) or a precipitous escarpment created by defendant *(Lucchesi v Kent County Road Comm, supra),* is inherently dangerous to anyone coming in contact with it, making the defendant's refusal to correct the situation akin to an intent to harm. In contrast, a slippery fountain pool, like sand dunes used for ORV vehicles *(McNeal v DNR, supra)* presents no threat to most people who come into contact with it, so that even if the defendant knows accidents have occurred in the past, the defendant's failure to correct the situation does not amount to wilful and wanton misconduct without more facts. As noted by the late Justice Moody, wilful and wanton misconduct is qualitatively different from and more blameworthy than ordinary, or even gross, negligence. *Burnett, supra,* p 462.

The trial court also properly dismissed plaintiff's intentional nuisance claim. An intentional nuisance is one created by conduct intended to bring about conditions which in fact constitute a nuisance. *Gerzeski v Dep't of State Highways,* 403 Mich 149, 161; 268 NW2d 525 (1978). To establish the necessary intent, a plaintiff must show that the defendant who created or continued the nuisance knew or must have know that harm to the plaintiff was substantially certain to follow as a result of the defendant's actions. *Martin v Michigan,* 129 Mich App 100, 109; 341 NW2d 239 (1983); *Jenkins v Detroit,* 138 Mich App 800; 360 NW2d

304 (1984). Nothing in plaintiff's pleadings suggests that harm was probable, let alone substantially certain, as a result of the condition of the fountain and lagoon.

We do not address the question of governmental immunity because it is not before us on appeal.

Affirmed. No costs, a public question being involved.