**Kevin Dean LEBETER, a minor by his Next Friend, Richard Dean LEBETER, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 89 C 2214.**

United States District Court, N.D. Illinois, E.D.

Aug. 28, 1990.

---

Marcia Gevers, Park Forest, Ill., for plaintiff.

---

Ira H. Raphaelson, Acting U.S. Atty. by James A. Shapiro, Asst. U.S. Atty., Chicago, Ill., for defendant/third-party plaintiff.

C. Lynn Lowder, Dana C. Crowley, Bullaro, Carton & Stone, Chicago, Ill., for third-party defendant.

MEMORANDUM OPINION
AND ORDER

NORDBERG, District Judge.

INTRODUCTION

On July 22, 1986, Kevin Dean Lebeter, then fourteen, fell from a rope swing attached to a tree overhanging the White River at Sischo Landing, in the Huron–Manistee National Forest, State of Michigan. Lebeter severely injured his foot after striking a sharp submerged object, never identified, in the White River. Lebeter, by his Next Friend and father, Richard Dean Lebeter, brought this suit against the United States under the Federal Tort Claims Act. Count I alleges that the United States negligently failed to remove the rope swing or to warn invitees of the potential danger in swinging from the rope. Count II charges the United States with willful and wanton conduct in failing to have the rope swing removed.

Before the court is defendant's motion for summary judgment and Lebeter's motion to strike defendant's affirmative defenses. The United States argues that Michigan's recreational use statute, M.C.L.A. § 300.201, bars Lebeter's claim for negligence under Count I, and that defendant's failure to remove the rope swing does not as a matter of law rise to the level of willful or wanton misconduct, as alleged in Count II. For the reasons stated below, the court grants defendant's motion for summary judgment with respect to both counts of the complaint. Lebeter's motion to strike is mooted.

FACTS

The relevant facts are not in dispute. Kevin Lebeter was on a camping trip with his Boy Scout troop in the Huron–Manistee National Forest when, on July 22, 1986, he embarked on a canoe trip down the White River, which runs through the Forest. The Forest, which is owned by the United States, encompasses 950,000 acres and is administered by the United States Forest Service. After canoeing some 35 miles, Lebeter's troop stopped at a sandbar along the White River known as Sischo Landing. Sischo Landing, on Sischo Bayou, is classified by the National Forest Service as a "Level One Outdoor Recreation Experience." Plaintiff's Exhibit F.

Under Title 2300, Recreation Management, the Forest Service maintains a Level One Primitive Recreational Area with "[n]o environmental modification unless absolutely necessary for resources protection. Unmodified natural environment and an absence of man-made development for comfort or convenience dominates." *Id.* Further, a Level One Primitive Recreational Area contains "no man-made furtherance of activity opportunities except indirectly through public safety and resource protection (i.e. trails, trail bridges, signing, and/or the development of primitive type campground). No contemporary activity opportunities." *Id.*

Sometime prior to the date of Lebeter's accident, Assistant Forest Service Ranger Phil Barker observed a rope swing attached to a tree limb overhanging the White River at Sischo Landing on Sischo Bayou. Defendant's Exhibit E at 31. The Forest Service did not attach the rope swing to the tree, and Barker does not know who did. *Id.* at 19. Barker did not report the rope swing to anyone and did not have it taken down. *Id.* at 16. Barker said he left the rope swing in place because he saw some recreational value in it, having swung on rope swings himself. *Id.* at 22.

After the Boy Scout troop arrived at the Sischo Landing sandbar, the scouts began swinging on the rope swing. After some fifteen scouts had swung on the rope, Lebeter took his turn. As he was swinging, he slipped off the rope. He landed about five or six feet short of where he had intended to land, falling into the water only two or three feet away from the river

bank. Plaintiff's Exhibit D at 107–108. Upon landing, plaintiff seriously injured his left foot as a result of contact with some sharp object apparently present in the riverbed but which no one could locate. *Id.* at 111–12. Lebeter presented written notice of a tort claim to defendant pursuant to 28 U.S.C. § 2401(b) on May 28, 1988, and having received no response from the United States, filed this amended complaint on November 9, 1989.

## DISCUSSION

### A. Negligence

The United States offers two arguments in support of its motion for summary judgment on Count I. In its first affirmative defense, the United States argues that Lebeter's negligence "is a bar to any recovery from the United States." In 1979, however, Michigan abandoned contributory negligence as a complete bar to recovery and adopted a pure comparative fault doctrine. *Placek v. City of Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511 (1979); *Rand v. Fibreboard Corporation,* 429 Mich. 540, 418 N.W.2d 650 (1988); *Lowe v. Estate Motors,* 428 Mich. 439, 410 N.W.2d 706 (1987). Under current Michigan law, fault assigned to contributory parties must be decided by the fact finder. Defendant next argues that because Lebeter paid no fee for use of defendant's land, his claim is barred under the Michigan recreational use statute, M.C.L. § 300.201; M.S.A. § 13.1485. This legislation precludes liability for mere negligence unless the injured party paid a user or admission fee for his enjoyment of the recreation area. The statute provides, in relevant part, that

> No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping,

camping, sightseeing, motorcycling, snowmobiling, or any other outdoor use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by gross negligence or willful and wanton misconduct of the owner, tenant or lessee.

Citing no authority, Lebeter asserts that payment of taxes to the United States constitutes payment of "valuable consideration" as contemplated by the Michigan recreational use statute ("RUS"). But if this were true, as defendant observes, the statute could never apply to publicly owned lands frequented by taxpayers—contrary to a host of Michigan cases holding otherwise. *See, e.g., Miller v. United States,* 649 F.Supp. 444, 448 (W.D.Mich.1986); *Jenkinson v. Dept. of Natural Resources,* 159 Mich.App. 376, 406 N.W.2d 302 (1987); *McNeal v. Dept. of Natural Resources,* 140 Mich.App. 625, 364 N.W.2d 768 (1985); *Syrowik v. City of Detroit,* 119 Mich.App. 343, 326 N.W.2d 507 (1982).[1]

Noting that he paid canoeing and camping fees to his Boy Scout camp, Lebeter speculates, "it is not established as to what this sum was used for or whether this sum was ultimately paid to the Defendant as the depositions of the agents for the Boy Scout Camp have not been held." Response, p. 6. Lebeter's unfounded speculation stands in contrast to his Scoutmaster's deposition testimony that the troop paid no money, directly or indirectly, to the United States or the National Forest Service for camping or canoeing. Def.Exh.C. There is simply no evidence that Lebeter paid valuable consideration to the United States. Under M.C.L. § 300.201, even if defendant's failure to remove the rope swing or warn of its dangers were negligent, mere negligence in the absence of payment of valuable consideration is not actionable.

1. At least one court has rejected the notion that paying taxes amounts to paying consideration for the use of government property. In *Hamilton v. United States,* 371 F.Supp. 230 (E.D.Va. 1974), the plaintiff attempted to find support for that principle in *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), in which a taxpayer successfully challenged a statute in federal court based upon his status as a taxpayer. The *Hamilton* court thought little of plaintiff's attempt: "[o]nly by the most vivid stretch of the imagination could Flast be construed as establishing the proposition that a taxpayer who pays taxes is therefore paying a consideration for the use of land owned by the United States." *Hamilton,* at 234.

Defendant's motion for summary judgment on Count I is therefore granted.

B. Willful and Wanton Misconduct

■ Michigan's recreational use statute would permit suit against the United States if Lebeter's injuries were caused by defendant's "willful and wanton misconduct." Count II alleges that defendant's failure to remove the rope swing at Sischo Landing amounts to exactly that.[2] The United States disagrees, moving for summary judgment on Count II.

In *Gibbard v. Cursan,* 225 Mich. 311, 196 N.W. 398 (1923), the Supreme Court of Michigan set forth a three-part test for determining when conduct is "willful and wanton." There must be (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. *Gibbard,* 196 N.W. at 402.

In *Burnett, supra,* the Michigan Supreme Court refined the test somewhat, looking to the third element requiring that the injury be "likely" in order to distinguish willful and wanton misconduct from only a high degree of carelessness. *Burnett,* 326 N.W.2d at 812. According to *Burnett,* "[i]t is in that concept—the notion that in the circumstances of a given case the injury is probable, or to be expected, or likely—that is found the requisite indifference to harm tantamount to a willingness that it occur, if not a specific intent that it does, which distinguishes willful and wanton misconduct from ordinary negligence." *Id.*

The United States says that its failure to remove the rope swing does not constitute willful and wanton misconduct. Supporting that view is *Miller v. United States*

*Dept. of Interior,* 649 F.Supp. 444 (W.D. Mich.1986). In *Miller,* the court, after conducting a bench trial, found the Park Service not liable for failing to remove a rope swing from a tree branch overhanging the Platte River in the Sleeping Bear Dunes National Lakeshore Park. Plaintiff in *Miller* fell from the rope swing into the Platte River, striking the water off balance, falling into the riverbed, fracturing his neck and sustaining permanent injuries. *Id.* at 447.

The *Miller* court acknowledged that "[w]hat is or is not willful and wanton misconduct under Michigan law is far from clear." *Miller,* at 450. The court identified two tests in *Burnett.* Under the majority test, "willful and wanton misconduct is established only if the conduct shows an intent to harm or at least such indifference as to whether harm will result as to be the equivalent of a willingness that it does." *Miller,* at 450. The other three justices, according to *Miller,* expressed a different standard: "It is the additional element of the recognition that failure to exercise ordinary care would have dire consequences that describes the reckless behavior which distinguishes willful and wanton misconduct from negligence." *Id.,* quoting *Burnett,* at 812.

"[U]nder either view," concluded the court, "no willful or wanton misconduct by park officials has been proved." *Miller,* at 450. The court explained:

> the existence of the rope swing was obvious to all ... There were no hidden defects, either known or that should have been known by the park officials, not known to the general public. By his own testimony, plaintiff stated that on the day of the accident there was a line up of people waiting to use the swing ... This swing obviously did not appear dangerous or present any threat to the many ordinary people who came to the park for

---

2. Lebeter has not suggested that "gross negligence," which may create a cause of action under the RUS, applies here, nor could he. In Michigan, the doctrine of gross negligence has been restated as the "last clear chance" doctrine, under which the defendant's subsequent negligence excuses the plaintiff's antecedent negligence. *Burnett v. City of Adrian,* 414 Mich. 448, 326 N.W.2d 810 at 814 (1982). Because the United States has been charged only with antecedent negligence, the doctrine of gross negligence does not apply here.

recreational purposes and who in fact were using the swing. *Id.* The similarity between these circumstances and those surrounding Lebeter's accident could hardly be closer.

Lebeter attempts to distinguish *Miller*, observing that plaintiff there was an adult, "familiar with the river, who had used the swing on previous occasions and was familiar with all the physical conditions surrounding the rope swing." Response, p. 8. But these observations reveal more about plaintiff's comparative negligence than about defendant's conduct in failing to remove the rope swing. The relevant inquiry is not what Lebeter knew about the swing, but what the United States knew or should have known. There is not a shred of evidence indicating defendant was "so indifferent to whether harm will result as to be the equivalent of a willingness that it does." *Miller*, at 450. As in *Miller*, the United States here "[a]t most ... may have been guilty of ordinary negligence in failing to anticipate a potential injury to someone using the swing and then failing to remove it." *Id.*

It is true that the concurrence in *Burnett*, as Lebeter stresses, cautions that "even in doubtful cases, questions of the existence of gross negligence and wilful or wanton misconduct are for the jury, not the judge, to decide." *Burnett*, at 823. But *Burnett* was decided on a motion for summary judgment under Michigan procedural law, which is equivalent to a motion to dismiss for failure to state a claim in federal procedure. The court there had only to decide the sufficiency of the pleadings, without the benefit of a "fully developed factual record." *Id.*, at 812. Based on the allegations before it—that defendant left a submerged structure in a lake, even though it knew or should have known that the structure created a dangerous undertow—the court found plaintiff's case barely sufficient to state a claim for willful and wanton misconduct.

Here there is a full factual record, one devoid of evidence suggesting willful or wanton misconduct. A rope swing is not like a "structure creating an undertow [which], like exposed guy wires ... or a precipitous escarpment created by defendant ... is inherently dangerous to anyone coming in contact with it, making the defendant's refusal to correct the situation akin to an intent to harm." *Estate of Matthews v. City of Detroit*, 141 Mich.App. 712, 367 N.W.2d 440, 443 (1985). The facts in *Matthews* illustrate the point. In *Matthews*, six-year old Malik Matthews drowned in a lagoon owned by the City of Detroit. Plaintiff alleged that

the city knew or had reason to know of the potential harm created by the lagoon, especially to children, knew that persons had slipped or fallen into the lagoon ... and knew that it was likely that others would slip or fall into the lagoon in the future; that the city knew or had reason to know that children played on or near the fountain and lagoon, and that, because of the construction, design, and location of the fountain and lagoon, children playing there were likely to fall into the lagoon and drown; and that the city failed or refused to avert the danger by fencing or otherwise placing barriers around the lagoon or fountain, draining the lagoon, posting warnings, or taking other appropriate precautions.

*Matthews*, at 443.

The court found "nothing in these allegations suggesting an intent to harm, and plaintiff has not alleged facts suggesting that injury is so probable, expected or likely that the indifference to harm is tantamount to a willingness that it occur." *Id.* "A slippery fountain pool," concluded the court, "presents no threat to most people who come in contact with it, so that even if the defendant knows accidents have occurred in the past, the defendant's failure to correct the situation does not amount to wilful and wanton misconduct without more facts." *Id.* The same is true for defendant's failure in this case to remove the rope swing from which Kevin Lebeter fell.

Defendant's motion for summary judgment is granted.